GLOBE LIQUOR CO., a Delaware corporation, Plaintiff,

v.

FOUR ROSES DISTILLERS COMPANY, a division of Joseph E. Seagram & Sons, Inc., Defendant.

Supreme Court of Delaware.

June 29, 1971.

Bruce M. Stargatt, of Young, Conaway, Stargatt & Taylor, Wilmington, for Globe Liquor.

James M. Tunnell, Jr., Walter K. Stapleton, and Kenton L. Cobb, of Morris, Nichols, Arsht & Tunnell, Wilmington, for Four Roses.

WOLCOTT, C. J., CAREY, J., and MARVEL, Vice Chancellor, sitting.

WOLCOTT, Chief Justice.

This matter comes to us by Certification from the Court of Chancery. The action is

brought under the Delaware Franchise Security Law (6 Del.C. § 2551 et seq., effective July 8, 1970) by Globe Liquor Co., a licensed liquor distributor, against Four Roses Distillers Company for injunctive relief and damages under that law. The action is based upon the attempt by Four Roses to terminate, in accordance with its provisions, the franchise granted Globe to distribute Four Roses' products in Delaware. The Franchise Security Law purports to prevent such termination except under certain conditions.

The certified questions of law are:

"Does the Delaware Franchise Security Law violate either:

"A. Section 10 of Article I of the Constitution of the United States;

"B. The Fourteenth Amendment of the Constitution of the United States;

"C. Section 7 of Article I of the Constitution of the State of Delaware; or

"D. Section 8 of Article I of the Constitution of the State of Delaware?"

Globe and Four Roses, on August 1, 1969, contracted to the effect that Globe, for a period of one year, was appointed as the sole distributor of Four Roses' products in Delaware. The contract provided that it would expire automatically on July 31, 1970. On June 29, 1970 Four Roses notified Globe that it did not intend to renew the franchise agreement upon its expiration. This action followed, based upon the contention that the Franchise Security Law prohibited the unilateral termination.

The Franchise Security Law states as its purpose the protection of franchised distributors against the termination by their supplier and licensors of their franchises "on short notice without just cause." The Law further states that such "unjustified terminations" have deprived franchisees of their equity, eliminated jobs, and otherwise adversely affected the economic stability of the State. The policy underlying the Law is the elimination of these undesirable results.

The Law covers:

(1) All wholesalers of trademark or trade name products;

(2) All retailers of products which bear the trademark or trade name of no more than three manufacturers;

(3) All wholesalers of publications.

Globe is subject to the Law as a franchise distributor since it is a wholesaler of trademark or trade name products, and Four Roses is subject to the Law as a franchisor selling trademark or trade name products to a franchise distributor.

The second section of the Law provides that a franchisor shall not "unjustly terminate a franchise" and "unjustly refuse to deal with a franchised distributor with whom such franchisor has been dealing for at least two years." "Unjust" and "unjustly" are defined to mean "without good cause or in bad faith."

The third section of the Law provides remedies to a franchised distributor if a franchisor unjustly terminates or threatens to terminate, or unjustly fails to renew or threatens to fail to renew a franchise. These remedies are the recovery of statutory damages and the right to secure in the Court of Chancery an injunction against the termination or refusal to renew.

The statutorily prescribed damages include but are not limited to the following:

1. The value of the franchised distributor's tangible assets attributable to the franchise;

2. Loss of good will;

3. Loss of profits, presumed to be not less than five times the profit in the most recently completed fiscal year;

4. All other damages allowed by law; and

5. Counsel fees and expenses.

Finally, the Law provides that even with good cause a franchisor shall not terminate or fail to renew without giving ninety days' notice to the franchised distributor.

■ Four Roses argues that the Franchise Security Law is unconstitutional because it impairs the obligation of a contract.

Section 10, Article I of the Federal Constitution provides that no State shall pass any law impairing the obligation of contract. In the early days of the Union the clause was used to strike down State action which had the effect of impairing or destroying the rights of one party to a contract; e. g., Sturges v. Crowninshield, 4 Wheat. 122, 17 U.S. 122, 4 L.Ed. 529 (1819); Trustees Dartmouth College v. Woodward, 4 Wheat. 518, 17 U.S. 518, 4 L.Ed. 629 (1819); Fletcher v. Peck, 6 Cranch 87, 10 U.S. 87, 3 L.Ed. 162 (1810).

However, economic growth and social evolution required that the contract clause not be permitted to stand in the way of attempts by the States to provide for the public health, safety and welfare under their police powers. Home Building and Loan Association v. Blaisdell, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413 (1934). The prohibition of the contract clause is no longer absolute and must yield to the right of the State to legislate to protect vital interests of the people, even though in so doing an incidental effect is the altering of remedial rights of contracting individuals. W. B. Worthen Co. v. Thomas, 292 U.S. 426, 54 S.Ct. 816, 78 L.Ed. 1344 (1934).

However, the courts have held that the States may not use their police power to alter or strike away the substantive rights and obligations of contracting parties without paying compensation. Only minor impairment or infringement of contractual rights is permissible. Hale, The Supreme Court and the Contract Clause, 57 Harv. L.Rev. 512 (1944); Hockman, The Supreme Court and the Constitutionality of Retroactive Legislation, 73 Harv.L.Rev. 692 (1960).

The effect of the Delaware Franchise Security Law is to transform the contract between Globe and Four Roses from one providing for a period of one year only with no right of renewal on the part of Globe to a contract to extend into the indefinite future which Four Roses may terminate only upon certain conditions and at its peril.

Substantial financial obligations are imposed upon Four Roses if it terminates or even attempts to terminate its relationship with Globe, and is unsuccessful in establishing that it is doing so for good cause and in good faith. It must decide at its peril whether or not it has good cause to terminate, and if it fails in this determination it is subjected to the payment of statutory damages which could be so substantial as to make it clear that they are savagely punitive, even though there was no proof by Globe that it had suffered any actual damages whatsoever. Indeed it is difficult to visualize that Globe could, under any circumstances, show any damage flowing merely from a threat to terminate; yet the making of such a threat is ground for Globe to seek its remedies, including damages, under the Law.

We think the Delaware Franchise Security Law accordingly makes a substantive change in the rights and obligations under this contract. These substantive changes are the imposition on Four Roses of the obligation to deal with Globe indefinitely, and the imposition of a penalty in the form of damages if it attempts to insist on its contractual rights. It is therefore not a minor change or infringement permissible under the exercise of the police power. It is therefore proscribed by the Contract Clause of the Federal Constitution.

■ Four Roses also argues that the Franchise Security Law is unconstitutional because it contains standards so vague and indefinite as to deprive a franchisor of property without due process of law in violation of the Fourteenth Amendment of

the Federal Constitution and Article I, Section 7 of the Delaware Constitution, Del.C.Ann., which prohibit the taking of property without due process of law. Ajax Distributors v. Springer, 26 Del.Ch. 101, 22 A.2d 838, aff'd 26 Del.Ch. 445, 28 A.2d 309 (1949).

Under the Law a failure to renew a franchise is unjust if it is made "without good cause or in bad faith." This is the only standard of conduct laid down. A franchisor seeking to terminate the franchise must therefore act at its peril in deciding to terminate, or even to threaten to terminate. If later the court concludes that the termination or the threat was "unjust", the franchisor then becomes subject to the imposition of the statutory damages which may be, and probably are, unrelated to the actual damages suffered by the franchisee. This, argues Four Roses, is the taking of property without due process of law.

It is true that a statute which imposes a standard of conduct for the breach of which an individual will be held responsible must define the conduct with sufficient particularity to enable him to make his conduct conform. If men of common intelligence must, of necessity, guess at its meaning and reach different conclusions as to its meaning, the statute is unconstitutionally vague. Connally v. General Construction Company, 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926); Lanzetta v. New Jersey, 306 U.S. 451, 59 S. Ct. 618, 83 L.Ed. 888 (1939); State v. Robinson, 251 A.2d 552 (Del.Supr.1969). While the question of vagueness has usually arisen in criminal cases, nevertheless in the context of the application of due process of law civil statutes as well are tested by it. A. B. Small Company v. American Sugar Refining Company, 267 U.S. 233, 45 S.Ct. 295, 69 L.Ed. 589 (1925).

If the language of a statute is attacked on the ground of vagueness, it will be upheld if the language used has a well-settled meaning in law, even though there could be differences of opinion as to elements of degree. Nash v. United States, 229 U.S. 373, 33 S.Ct. 780, 57 L.Ed. 1232 (1913). Nor will a statute be held unconstitutional if the courts can look through imprecision of language to the intent of the Legislature. Connally v. General Construction Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926).

The question is therefore whether "good cause" and "bad faith" have such a settled meaning in law that they set up an intelligible standard of conduct. We think they do.

For example, under the National Labor Relations Act, 29 U.S.C. § 158(d), an employer is required to bargain in good faith. A holder in due course under the Uniform Commercial Code is one who takes an instrument for value in good faith, and a buyer in the course of business is one who purchases in good faith. U.C.C. §§ 3–302, 1–201(9). The term "good faith" is defined in the Uniform Commercial Code as "honesty in fact" (§ 1–201(19) ).

Similarly, the term "good cause" has been repeatedly used in the law to establish a standard of conduct. For example, the Unemployment Compensation Law by 19 Del.C. § 3315(1) disqualifies an individual who has voluntarily left his job "without good cause", and the Delaware Alcoholic Beverage Control Commission may refuse certain license and franchise applications "for cause". Rule 46, Delaware Alcoholic Beverage Control Commission.

In short, we think the Delaware Franchise Security Law is not unconstitutional for vagueness.

■ Finally, Four Roses argues that the Law is unconstitutional because it violates the Fourteenth Amendment and Article I, Sections 7 and 8 of the Delaware Constitution. The argument is that the Law imposes an unreasonable classification between wholesale and retail franchises. The classification of franchisees distinguishes

between all wholesalers and retailers who deal in no more than three trademark or trade name products of manufacturers.

A State in the exercise of its police power may regulate businesses for the public benefit if conditions present a reasonable necessity for the imposition of restraint, and the means employed bear a reasonable relation to the end sought. Mid-Penn National Mortgage Company v. Hughes, Del.Super., 258 A.2d 291, aff'd Green v. Mid-Penn National Mortgage Co., Del., 268 A.2d 876; Hoff v. State, 9 W. W.Harr. 134, 197 A. 75 (1938). Both the interest of the public and the reasonableness of the means employed must be present before the use of the regulatory authority of the State may be interposed in private business activity.

Four Roses argues that since the purpose of the Franchise Security Law is to prevent economic injury to franchised distributors, which affects the State's economic stability, the Law goes beyond the necessities in its classification of franchised distributors and in the remedies provided for a breach.

It is argued that the classification of all wholesalers and of all retailers who sell not more than three trade name products has no reasonable justification in the light of the statutory purpose. Four Roses points out that presumably the classification of retailers selling not more than three trade name products would carry out the statutory intent and protect from loss a retailer who is in fact economically dependent upon the sale of the products and who has used his efforts in promoting them. It is conceded that this limitation relates to the object of the Law.

In the case of the wholesaler, however, it is argued, the classification is unreasonable because, since the wholesaler may act as distributor for an infinite number of trade name products, there is no necessary inference that he is economically dependent on the franchise. Therefore, says Four Roses, the classification is arbitrary.

Furthermore, argues Four Roses, since Globe is a wholesaler distributor acting as distributor for Four Roses and for five other manufacturers as well, there can be no inference of economic dependence upon the Four Roses franchises. Also, it is pointed out that if, in fact, Globe was a retailer, it would have no remedy under the Law at all because it deals in more than three trade name products. The result, it is argued, is inexplicable in the light of the statutory purpose.

An identical argument is made with respect to the requirement that damages be paid to wholesale distributors irrespective of the existence of any actual economic injury taking place as a result of franchise termination, the prevention of which is the fundamental object of the Franchise Security Law. This is characterized as the taking of funds from a private party and paying them to another private party whether or not the stated public interest is being served. It is said that this is an unconstitutional taking of private property without due process of law.

With respect to the argument that the classification made by the Franchise Security Law of franchised distributors is unconstitutional, we find that the classification is not arbitrary or capricious, and is therefore not unconstitutional.

When the validity of a classification is before a court it will not substitute its judgment for that of the Legislature. On the contrary, the classification will be upheld if it can be held reasonable in the light of the purpose of the Law without doing violence to common sense. Tusso v. Smith, 39 Del.Ch. 198, 162 A.2d 185 (Supr.1960). If any facts can be assumed which will support the classification, then that assumption must be made to uphold the classification. Aetna Casualty & Sure-

ty Co. v. Smith, 36 Del.Ch. 391, 131 A.2d 168 (1957).

We will not detail the facts and circumstances, the assumption of which would validate the classification. They are set out in Globe's brief. Suffice it to say we make the assumption and uphold the classification.

■ With respect to the argument that the remedy provided for termination or threat to terminate a franchise and turning it over to another is the taking of private property without due process of law, we are of the opinion that it is such a taking.

Globe argues earnestly that the remedy given is not punitive, but is in fact compensatory and that the distributor must prove his losses. We think, however, that the remedy prescribed is in fact punitive. By the Law, an aggrieved distributor is entitled to recover damages which are defined. It is provided that the recoverable damages "shall include, but shall not be limited to" certain specified items which we have set forth fully in the foregoing parts of this opinion: The Law does not require that actual loss be proven by the distributor before he is entitled to recover the statutory damages. The Law is mandatory that upon proof of a termination, or of a threat to terminate, the distributor shall recover the statutory damages. Thus it is that the statutory damages, in the absence of any actual loss to the distributor, are not compensatory, but are in fact punitive. As such, they are the taking of private property without compensation and without due process of law.

The questions of law certified to us are not framed so as to permit merely an affirmative or negative answer. We have of course found some constitutional defects in the Franchise Security Law, but we have upheld other provisions against a constitutional attack. We will accordingly simply state that the answers to the certified questions may be found in this opinion.