**William MARINIELLO, t/a J & B Shell Stations, Inc., Plaintiff,**

**v.**

**SHELL OIL COMPANY, a corporation of the State of Delaware, authorized to transact business in the State of New Jersey, Defendant.**

**Civ. A. No. 1506-72.**

United States District Court, D. New Jersey.

Jan. 11, 1974.

Fierro, Fierro & Mariniello by Joseph R. Mariniello, Fort Lee, N. J., for plaintiff.

Howrey, Simon, Baker & Murchison by Michael M. Levy, Michael W. Graney, William Simon, Washington, D. C., (District of Columbia bar), Mattson, Madden, Polito & Loprete by Andrew S. Polito, Michael D. Loprete, Newark, N. J., for defendant.

## OPINION

COOLAHAN, District Judge:

The question for decision is whether, in the light of Shell Oil Co. v. Marinello, 63 N.J. 402, 307 A.2d 598 (1973), cert. den., 42 U.S.L.W. 3460 ("the *Shell* decision" or "*Shell*"), this Court's December 27, 1972 grant of summary judgment to defendant Shell Oil Company on count 2 of the complaint and on count 2 of the counterclaim must be vacated. The Court concludes that it is not bound by the *Shell* decision to vacate its grant of summary judgment. That judgment will therefore not be disturbed.

### i. The Contract Clause

Article I, Section 10 of the Constitution provides, "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ." Defendant argues that the New Jersey Franchise Practices Act, N.J.S.A. 56:10–1 et seq., works an unconstitutional impairment of its lease and dealer agreement with plaintiff Mariniello, because it converts an obligation to deal for a fixed period of time into an obligation to deal indefinitely. Specifically, the argument runs, the Supreme Court of New Jersey has in fact applied the Franchise Practices Act in its *Shell* decision, and that judicial interpretation is sufficient to present to this Court the issue of the constitutionality of the New Jersey statute.

This Court agrees that *Shell* utilized N.J.S.A. 56:10–1 et seq. As Mr. Justice Holmes put it in Terre Haute & Indianapolis R. R. v. Indiana ex rel. Ketcham, 194 U.S. 579, 589, 24 S.Ct. 767, 769, 48 L.Ed. 1124 (1904), "[t]he state court has sustained a result which cannot be reached . . . without relying on [state] legislation. It clearly did rely upon that legislation to some extent, but exactly how far is left obscure." The *Shell* decision, however, does not *directly* invoke the New Jersey statute sought to be put in issue under the Contract Clause. The trial court's opinion, which as modified was affirmed by *Shell*, holds that the Franchise Practices Act did not apply to the controversy there decided. 120 N.J. Super. 357, 368–371, 294 A.2d 253 (Law & Ch.Divs.1972). The Supreme Court of New Jersey stated that "[t]he Act does not directly control the franchise relationship herein. . . . " 63 N.J. at 409, 307 A.2d at 602.

Detroit United Ry. v. Michigan, 242 U.S. 238, 246–247, 37 S.Ct. 87, 89, 61 L.Ed. 268 (1916), states, "[i]t is true, as this court has many times decided, that the 'contract clause' of the Constitution is not addressed to such impairment of contract obligations, if any, as may arise by mere judicial decisions in the state courts without action by the legislative authority of the state." Although there is authority that supports defendant's contention that the Franchise Practices Act works an unconstitutional impairment of contract,[1] the Act is not *ipsis-*

1. Consumers Oil Corp. of Trenton v. Phillips Petroleum Co., 488 F.2d 816 at 819–820 (3d Cir., 1973) (actual state interpretation of the Franchise Practices Act may raise "substantial constitutional questions"); Globe Liquor Co. v. Four Roses Distillers Co., 281 A.2d 19 (Del.Sup.Ct.1971) (Delaware Franchise Security Law that provided that franchisor could not "unjustly terminate a franchise" was declared unconstitutional because it effected "substantive change" in rights and obligations under contract in suit, 281 A.2d at 21); Comment, "Franchise Regulation: An Appraisal of Recent State Legislation," 13 B.C. Ind. & Comm.L.Rev. 529, 560–61 (1972) (There is a ". . . serious question whether a law can be drafted that will be upheld as constitutional and still be strong enough to protect franchisees"; "To prohibit refusals to renew in effect creates a contract of indeterminate duration," echoed at 63 N.J. 411, 307 A.2d 603, ". . . Marinello's franchise, including his lease, would have legal existence for an indefinite period . . ."); Superior Motors, Inc. v. Winnebago Industries, Inc., 359 F.Supp. 773 (D.S.C.1973) ("It is the retrospective *application of* this legislation . . . which is the concern of this decision," 359 F.Supp. at 778 (emphasis added); abstention is not mandated ". . . where the issue of a state statute's constitutionality is *squarely presented* to the court," 359 F.Supp. at 782 (emphasis added)).

*See also*, Brown, "Franchising: Fraud, Concealment and Full Disclosure," 33 Ohio St.L.J. 517 (1972); Brown & Cohen, "Franchise Misuse," 48 Notre Dame Lawyer 1145 (1973); Caine, "Termination of Franchise

*simis verbis* the subject of interpretation in *Shell.* This Court will not strike down a state statute under the Contract Clause unless that statute is itself directly and unequivocally implicated in the alleged impairment of contract. Accordingly, the Court refrains from ruling on whether the Franchise Practices Act works an unconstitutional impairment of contract between a franchisor and his franchisee.[2]

ii. The Supremacy Clause

The Franchise Practices Act reads in pertinent part, "[i]t shall be a violation of this act for a franchisor to terminate, cancel or fail to renew a franchise without good cause. For the purposes of this act, good cause for terminating, canceling, or failing to renew a franchise shall be limited to failure by the franchisee to substantially comply with those requirements imposed upon him by the franchise." N.J.S.A. 56:10-5. The key holding of *Shell* appears at 63 N.J. 410-411, 307 A.2d 603, and precisely tracks the Franchise Practices Act.[3] "We hold . . . that . . . the public policy of this State . . . requires that there be read into [service station lease and dealer agreements] the restriction that Shell [a franchisor] not have the unilateral right to terminate, cancel or fail to renew the franchise, including the lease, in absence of a showing that Marinello [a franchiseee] has failed to substantially perform his obligations under the lease and dealer agreement, *i. e.*, for good cause. . . ." Such was never the common law of contract in New Jersey. And such cannot fairly be said to be a legal creation of the Supreme Court of New Jersey alone, without reference to N.J.S.A. 56:10-5. The phrasing and syntax of the holding in the *Shell* decision and of the state statute are strikingly similar; the policies expressed by each are identical; the practical effect of each is the same. Indeed, the reference in *Shell* to "the public policy of this State," 63 N.J. at 410, 307 A.2d at 603, must be deemed a reference to the same policy considerations[4] as are incorporated in N.J.S.A. 56:10-2. To pretend that the *Shell* decision independently created new law without reliance on the Franchise Practices Act is to blink reality.

█ *Terre Haute & Indianapolis R. R., supra,* states, "[w]e are of opinion that we cannot decline jurisdiction of a case . . . because the state

Agreements: Some Remedies for Franchisees Under the Uniform Commercial Code," 3 Cumberland-Samford L.Rev. 347, 366-72, 388-401 (1972); Chisum, "State Regulation of Franchising: The Washington Experience," 48 Wash.L.Rev. 291, 377-83 (1973); Collison, "Trademarks—The Cornerstone of a Franchise System," 24 Southwestern L.J. 247 (1970); Gellhorn, "Limitations on Contractual Termination Rights—Franchise Cancellations," 1967 Duke L.J. 465 (1967); "Student Symposium: The Franchise Relationship—Abuses & Remedies," 33 Ohio St.L.J. 641, 664-73 (1972).

2. The strongest statement that this Court can find to the effect that a Contract Clause question is properly presented even though the state statute is not squarely and directly invoked comes from Cross Lake Shooting & Fishing Club v. Louisiana, 224 U.S. 632, 638-639, 32 S.Ct. 577, 579, 56 L.Ed. 924 (1912): ". . . when the state court, either expressly or *by necessary implication,* gives effect to a subsequent law of the State whereby the obligation of the contract is alleged to be impaired, a Federal question is presented. In such a case it becomes our duty to take jurisdiction. . . ." (emphasis supplied) Because this Court is deciding the case at bar on Supremacy Clause grounds, it becomes unnecessary to base decision on the Contract Clause.

3. Note, 4 Seton Hall L.Rev. 683 (1973) refers to the trial court's decision in *Shell* as adhering to the "underlying spirit" of the Franchise Practices Act (at 683) and, at 685, comments that "the spirit of the Act was effected" by the lower court decision.

4. Franklin National Bank v. New York, 347 U.S. 373, 74 S.Ct. 550, 98 L.Ed. 767 (1954), states, 347 U.S. at 378-379, 74 S.Ct. at 554, "[t]here appears to be a clear conflict between the law of New York and the law of the Federal Government. We cannot resolve conflicts of authority by our judgment as to the wisdom or need of either conflicting policy. The compact between the states creating the Federal Government resolves them as a matter of supremacy. However wise or needful New York's policy, a matter as to which we express no judgment, it must give way to the contrary federal policy."

court put forward the untenable construction more than the unconstitutional statutes in its judgment. To hold otherwise would open an easy method of avoiding the jurisdiction of this court." 194 U.S. at 589, 24 S.Ct. at 769. Because this Court concludes that the *Shell* decision in reality constitutes, " . . . to some extent, but exactly how far is left obscure," a judicial interpretation and application of the Franchise Practices Act, and thus comprises the meaning of that Act equally as the statute's very words, it is compelled to accept jurisdiction to decide if the Act as explicated in *Shell* raises a question under the Supremacy Clause that involves the Lanham Act, 15 U.S.C. § 1051 et seq.[5]

The Lanham Act, which constitutes the federal statutory law of trademarks, is properly at issue in the present proceedings. First, N.J.S.A. 56:10-3(a) defines a "franchise" as " . . . a written arrangement . . . in which a person grants to another person a license to use a . . . trade mark. . . . " It is uncontested that such an arrangement exists between plaintiff and defendant in the case at bar. Second, the use of registered trademarks in the gasoline service station business constitutes use that has sufficient impact upon interstate commerce to invoke the Lanham Act. Pure Oil Co. v. Puritan Oil Co., 127 F.2d 6, 8 (2d Cir. 1942) (L. Hand, J.); Application of Gastown, Inc., 326 F.2d 780, 782, 51 C.C.P.A. 876 (1964). Third, the various trademarks used by the Shell Oil Company to market its products through service stations are federally registered trademarks under 15 U.S.C. § 1051.

The holding of the *Shell* decision is succinctly expressed in its companion case, Texaco, Inc. v. Appleget, 63 N.J. 411, 307 A.2d 603 (1973). *Texaco* states, at 412, 307 A.2d at 604, that *Shell* " . . . restricts the unilateral right of an oil company to terminate, cancel or fail to renew a lease and dealer agreement with one of its service station operators to a situation where 'good cause' for such action exists."[6] Under the law created in the *Shell* decision, a franchisor such as the Shell Oil Company that licenses its federally registered trademarks to a service station operator-franchisee for a limited, definite period of time (customarily, one or several years; in the case at bar, three years) is actually granting a license for an indeterminate period of time. As stated at 63 N.J. 411, 307 A.2d 603, the franchise " . . . would have legal existence for an indefinite period. . . . "

Under the Lanham Act, 15 U.S.C. § 1114(1), a trademark owner ("registrant") who registers his trademark is granted the exclusive right to the use of the trademark, as well as the right to restrain all others from using it without his permission.[7] The *Shell* decision acts

5. A single-judge District Court is the proper forum in which to decide questions arising under the Supremacy Clause of the Constitution, where there is a claim that a state statute conflicts with and is preempted by a federal statute. Swift & Co. v. Wickam, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965).

6. This explanation precludes the possibility of the Court avoiding a collision between state and federal trademark regulation by construing "trade mark" in N.J.S.A. 56:10-3(a) as referring only to common law and state registered trademarks, N.J.S.A. 56:3-13.1 et seq., and not to federally registered trademarks. An "oil company" of any significance has its trademarks federally registered.

7. 15 U.S.C. § 1114(1) reads in pertinent part as follows:

"Any person who shall, without the consent of the registrant—(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale [or] distribution . . . of any goods or services . . . shall be liable in a civil action by the registrant. . . . " The phrase "any person" is all-inclusive. If Congress had meant to limit the applicability of 15 U.S.C. § 1114(1) to competitors of similar economic strength, it would so have legislated.

Our own Circuit recognized this concept of exclusivity of control long before the Lanham Act came into existence. Judge Woolley stated, in Hicks v. Anchor Packing Co., 16 F.2d 723, 726 (3d Cir. 1926), "[a] grant of an exclusive use of a trademark, *limited*

to destroy the right of an owner of a federally registered trademark to grant a license of that mark for a specific, definite term. Reciprocally to such impairment of the rights of the registrant, the *Shell* decision unavoidably bestows new rights to the trademark upon the franchisee: the franchisee's license to use the trademark, instead of lapsing at the end of the set time called for in the written lease and dealer agreement between the parties, continues "for an indefinite period." Such elongation is not a simple temporal adjustment, without more. Conversion from a definite date of termination to an indefinite date of termination constitutes both a substantive enhancement of the franchisee's rights in the trademark, and a corresponding substantive impairment of the franchisor-registrant's rights in his trademark.

■ Congress, by defining "commerce" for the purpose of the Lanham Act as signifying ". . . all commerce which may lawfully be regulated by Congress," 15 U.S.C. § 1127, left no doubt that its intention was to regulate federally registered trademarks to the furthest reach of its constitutional power. As explained in Bulova Watch Co. v. Steele, 194 F.2d 567, 571 (5th Cir.), aff'd, 344 U.S. 280, 73 S.Ct. 252, 97 L. Ed. 319 (1952), ". . . in the Lanham Trade Mark Act of 1946, the Congress intended to regulate interstate and foreign commerce to the full extent of its constitutional powers." A. Smith Bowman Distillery, Inc. v. Schenley Distillers, Inc., 198 F.Supp. 822, 825 (D. Del.1961), concurs: ". . . Congress here intended to regulate all it constitutionally could."

■ The intention of Congress in passing the Lanham Act, and consequently the purpose of that statute, is unmistakably expressed in 15 U.S.C. § 1127. That intention is ". . . to protect registered marks used in [interstate] commerce from interference by State . . . legislation." *See* S. Rep.No. 1333, 79th Cong., 2d Sess. (1946), U.S.Code Cong.Service, p. 1274. Where Congress is granted constitutional authority to legislate and has exercised its power in that field to the fullest, the states have no authority to legislate on the same subject matter. As stated in McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316, 435, 4 L.Ed. 579 (1819), ". . . the states have no power . . . to . . . in any manner control, the operations of the constitutional laws enacted by congress. . . ." In the case at bar, unlike the situation with which this Court was recently confronted in Wuillamey v. Werblin, 364 F.Supp. 237, 242 (D.N.J.1973), there exist two legislative enactments—15 U.S.C. § 1051 et seq., and N.J.S.A. 56:10–1 et seq. as implemented by the Supreme Court of New Jersey in the *Shell* decision—that deal with the same subject matter and occupy the same field, *i. e.*, federally registered trademarks.

■■ Under the Supremacy Clause of the Constitution (Article VI, Clause 2), ". . . the Laws of the United States . . . shall be the supreme Law of the Land . . . any Thing in the . . . Laws of any State to the Contrary notwithstanding." The Supremacy Clause prohibits the State of New Jersey from legislating in the field of federally registered trademarks. Burger King of Florida, Inc. v. Hoots, 403 F.2d 904, 907 (7th Cir. 1968), states that under the federal trademark statutes antedating the Lanham Act, ". . . the policy of the Acts, to provide protection of federally registered marks used in interstate commerce, 'may not be defeated or obstructed by State law' and that if state law conflicts with the policy it 'must yield to the superior federal law' . . . . [F]ederal-registration rendered all questions of use and protection in interstate commerce questions of federal law, not state law." (quoting Philco Corp. v. Phillips Manufacturing Co., 133 F.2d

*as to duration* and place . . . does not convey title or establish ownership of the trademark in the licensee . . ." (emphasis added). See also Campbell Soup Co. v. Armour & Co., 175 F.2d 795 (3d Cir. 1949); In re Beatrice Foods Co., 429 F.2d 466, 472 (C.C.P.A.1970).

663 (7th Cir. 1943) at 671–672) And Mister Donut of America, Inc. v. Mr. Donut, Inc., 418 F.2d 838 (9th Cir. 1969), states at 844, "[w]hat the effect of this California statutory provision might be if the Lanham Act had not been passed by Congress, we need not decide. The Lanham Act has pre-empted the field of trademark law and controls." The decision of the Supreme Court of New Jersey in Shell Oil Co. v. Marinello, by utilizing N.J.S.A. 56:10–1 et seq. to whittle the rights of the owner of a federally registered trademark and correspondingly to enlarge the rights of a licensee in such a trademark, collides with the Lanham Act's preemptive grant to its owner of total control of a federally registered trademark. Consequently, insofar as the *Shell* decision regulates the rights of owners of federally registered trademarks and the rights of their licensees, it is invalid and inapplicable.

A Supremacy Clause argument may be composed of two parts, "preemption" and "conflict." Helmsley v. Borough of Fort Lee, 362 F.Supp. 581, 589–591 (D.N.J.1973). Under the federal law of trademarks, it is axiomatic that a licensee of a registered trademark is entitled to only those rights that are conveyed to him in the licensing arrangement. As stated in Pacific Supply Cooperative v. Farmers Union Central Exchange, Inc., 318 F.2d 894, 908 (9th Cir. 1963), " . . . appellant fails to recognize the long settled principle of law that a licensee . . . of a trademark . . . may not set up any adverse claim in it as against its licensor." This limitation of the rights of the licensee to those included in the licensing agreement is in conflict with the holding in the *Shell* decision, which utilizes the Franchise Practices Act to grant rights for "an indefinite period" to a licensee of a federally registered trademark.

Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963), states, "[t]he test of whether both federal and state regulations may operate, or the state regulation must give way, is whether both regulations can be enforced without impairing the federal superintendence of the field. . . ." The New Jersey regulation of trademarks in *Shell*, which grants to the licensee more and greater rights than bestowed by the licensor, cannot be enforced without impairing the effectiveness of the Lanham Act, which limits a licensee's rights to what is granted by the licensor-owner of the federally registered trademark. "[A]ny state legislation which frustrates the full effectiveness of federal law is rendered invalid by the Supremacy Clause." Perez v. Campbell, 402 U.S. 637, 652, 91 S.Ct. 1704, 1712, 29 L.Ed.2d 233 (1971).

Defendant's federally created rights cannot be nullified by state regulation where federal policy runs directly to the contrary in a field that has been preempted by federal legislation. The Court must conclude that the irreconcilable conflict engendered by the clash of federal and state regulation demands that state law give way to federal. Gibbons v. Ogden, 22 U.S. (9 Wheat.) 1, 6 L.Ed. 23 (1824). It is accordingly held that the State of New Jersey cannot interfere with defendant Shell's federal rights (1) to limit the grant of its federally registered trademarks to its licensees for the stated period of time spelled out in its leases, (2) to regain full and exclusive use of its licensed-out trademarks when that period of time has expired, unless renewal or rearrangement of the lease and dealer agreement is otherwise mutually made, and (3) not to suffer any adverse consequences (*e. g.*, having to defend an action brought in a state court for injunctive relief and damages, N.J.S.A. 56:10–10) that may stem from its so limiting the grant of its federally registered trademarks.