**B–F SPIRITS, LTD., an unincorporated division of Brown Forman Distillers Corporation, and Brown Forman Distillers Corporation,**

v.

**DELAWARE ALCOHOLIC BEVERAGE CONTROL COMMISSION and Blue Hen Beverage, Ltd.**

**CARLTON SALES COMPANY**

v.

**DELAWARE ALCOHOLIC BEVERAGE CONTROL COMMISSION and State Distributors, Inc.**

**JOSEPH E. SEAGRAM & SONS, INC. (Seagram Distillery Company, division)**

v.

**DELAWARE ALCOHOLIC BEVERAGE CONTROL COMMISSION and N–K–S Distributors, Inc.**

Superior Court of Delaware, New Castle County.

Submitted June 27, 1980.

Decided July 3, 1980.

Michael D. Goldman (argued), Daniel F. Wolcott, Jr., Somers S. Price, Jr., and Todd S. Collins of Potter, Anderson & Corroon, Wilmington, for B–F Spirits, Ltd. and Brown Forman Distillers Corp., appellants.

Joseph A. Hurley (argued), of Paul & Hurley, Wilmington, for Carlton Sales Co., appellant.

W. Jeffrey Whittle (argued), and Jeoffrey L. Burtch of Cooch & Taylor, Wilmington, for Joseph E. Seagram & Sons, Inc., appellants.

John E. Babiarz, Jr. (argued), and Francis S. Babiarz of Morris, Nichols, Arsht & Tunnell, Wilmington, for Blue Hen Beverage, Ltd., appellee, and State Distributors, Inc., intervenor.

Timothy M. Rafferty (argued), Wilmington, for N–K–S Distributors, Inc., appellee.

O'HARA, Judge.

The matters presently before the Court are three consolidated appeals from decisions of the Delaware Alcoholic Beverage Control Commission ("Commission"). Appellants are all liquor suppliers which had sought to terminate certain franchise agreements with appellees, liquor distributors.[1] Appellees sought and were granted hearings before the Commission, pursuant to the Commission's Rule 46, on the proposed terminations. In all cases the burdens were on appellees to show cause why the proposed terminations should not be permitted by the Commission. In all cases the Commission found that appellees had increased sales of appellants' liquor products (which were the subject matters of the respective franchise agreements) in recent years. On this basis the Commission held that appellees had satisfied their burdens of showing cause and, therefore, denied appellants' permission to terminate the franchise agreements.

Each of the instant franchise agreements was oral and silent on restrictions on termination by either party. Appellees did not directly pay any money to appellants for the right to distribute appellants' products in Delaware.

The Commission's Rule 46, effective February 1, 1960, provides in pertinent part:

"No distiller, manufacturer, brewery, or supplier shall enter into a franchise written or otherwise, for the distribution of spirits, wine or beer to a licensed wholesaler within the State without first having the first franchise approved by the Commission . . . .. If the franchise is approved, the same shall not be transferred or cancelled by the vendor or supplier without first obtaining the permission of the Commission, which may be refused for cause, to do so . . . .."

The Commission's regulations do not otherwise limit the operation of Rule 46, nor do they expressly define the term "franchise".

Although appellants have proffered several distinct arguments in support of their collective contention that the decisions below must be reversed, the Court finds it necessary to consider only the claim that Rule 46 is invalid because inconsistent with express statutory provisions. *See Appeal of Dept. of Natural Resources*, Del.Super., 401 A.2d 93 (1978), and *Wilmington Country Club v. Delaware Liquor Com'n*, Del.Super., 8 Terry 352, 91 A.2d 250 (1952).

The Commission derives its power solely from Title 4 of the Delaware Code. Appellees cite 4 *Del.C.* § 304(a)(2) as the source for the Commission's authority to promulgate Rule 46. At the time Rule 46 was promulgated in 1960 this statute[2] provided:

"The duties and powers of the Commission shall be to—

\*       \*       \*       \*       \*       \*

(2) Establish by rules and regulations an effective control of the business of manufacture, sale, dispensation, distribution and importation of alcoholic liquors within and into the State of Delaware, including the time, place and manner in which alcoholic liquors shall be sold and dispensed, not inconsistent with the provisions of this title."

---

1. Although State Distributors, Inc. is technically an intervenor in this Court, it too will be referred to as appellee for convenience sake. The Commission was duly notified of these appeals, but has, through counsel, indicated that it does not choose to actively participate in the proceedings before the Court. Alternatively, it has elected to rest upon the brief filed herein by appellee N–K–S Distributors, Inc.

2. The statute in 1960 was codified as 4 *Del.C.* § 304(2). This provision is now found in 4 *Del.C.* § 304(a)(2).

In 1960 the laws of this State did not generally seek to regulate franchise agreements as such. However, in 1970 the Legislature enacted the Delaware Franchise Security Law which now extensively regulates termination rights in such agreements. 6 *Del.C.* § 2551 *et. seq.* Remedies for terminations without just cause or in bad faith may be had in the Court of Chancery. 6 *Del.C.* § 2553. There is little doubt that the Franchise Security Law covers at least some liquor franchise agreements, since the primary case substantially upholding the Law's constitutionality involved just such an agreement. See *Globe Liquor Co. v. Four Roses Distillers Co.*, Del.Supr., 281 A.2d 19 (1971).

It can be argued, quite persuasively, that one result of the enactment of the Franchise Security Law was to completely preempt the Commission's authority to act in the area of liquor franchises. Appellees disagree and argue that there has been no such preemption, at least as to the Commission's authority to regulate the instant franchise agreements, for which appellees paid no money directly to appellants. Appellees contend that this factor removes the instant agreements from the purview of the Franchise Security Law, as § 2551(3) provides:

> Franchise' means a contract or other arrangement governing the business relationship within this State between a franchised distributor and a franchisor where the franchised distributor is required to pay more than $100 to enter into such contract or other arrangement."

Assuming appellees are correct in their assertion that the instant agreements are not covered by § 2551(3) because they did not pay more than $100 to appellants to enter the agreements,[3] there is yet one more legislative turn of events that ultimately con-

vinces the Court that Rule 46 has been legislatively voided.

In 1973 the Legislature enacted a series of amendments to Title 4 of the Delaware Code. See 59 Del. Laws, c. 107. Section 304, while not extensively amended, was significantly changed for present purposes. That statute now provides in pertinent part:

> "(a) The Commission shall:
>
> \*    \*    \*    \*    \*    \*
>
> (2) Establish by rules and regulations an effective control of the business of manufacture, sale, dispensation, distribution and importation of alcoholic liquors within and into the State, including the time, place and manner in which alcoholic liquors shall be sold and dispensed, *not inconsistent with* the provisions of this title or with *the provisions of any other law of this State*." (Emphasis added).

The emphasized language is significant, since it cannot be denied that, at least insofar as Rule 46 seeks to regulate liquor franchises which fall within the purview of 6 *Del.C.* § 2551(3), the Rule is inconsistent with the Franchise Security Law and, therefore, not within the Commission's 4 *Del.C.* § 304(a)(2) authority. Lest it be argued that so long as Rule 46 was valid under § 304 at the time it was promulgated, it was unaffected by the 1973 amendment to § 304, the Court makes additional reference to Sections 68 and 69 of 59 Del. Laws, c. 107, which provide:

> "Section 68. The Delaware Alcoholic Beverage Control Commission is hereby expressly directed to refrain from engaging in the prosecution of any statute except those found in Title 4 of the Delaware Code and the Rules of the Commission. Any issue or other matter concerning the regulation of alcoholic liquors

---

**3.** This question has not been decided in any reported decision cited by the parties or uncovered by the Court's own research, nor is it decided herein. However, the Court notes that it might not be unreasonable to construe the $100 provision of § 2551(3) as requiring simply the investment of such amount by a franchisee in order to enter a franchise agreement, as

distinguished from the payment of the requisite amount directly to a franchisor. In any event, given that the Court of Chancery has subject matter jurisdiction under the Franchise Security Law, that would appear to be the most appropriate forum in which to initially seek a construction of § 2551(3).

which can be prosecuted or tried in a court of law or chancery shall be tried or prosecuted in court, and not before the Commission. The powers of the Commission are limited only to those powers expressly given in Title 4 of the Delaware Code and cannot be extended beyond a strict construction thereof, except with the approval of the General Assembly.

"Section 69. All rules and regulations of the Delaware Alcoholic Beverage Control Commission which on or after the effective date of this Act are in conflict with the provisions of this Act are made *null and void.*" (Emphasis added).

Even assuming that the instant agreements are not covered by 6 *Del.C.* 2551(3),[4] Rule 46 is still in conflict with the Franchise Security Law, since the Rule does not differentiate between those liquor franchises which are included in § 2551(3) and those which arguably are not. Consequently, pursuant to 59 Del. Laws, c. 107, Sections 68 and 69 (which make no allowance for rules which are partially in conflict with other laws), Rule 46 in its present scope has been legislatively voided. It necessarily follows from this conclusion that the Commission had no authority to proceed under Rule 46 in the instant cases, and the decisions below must be reversed.

4. See n. 3, *supra,* and accompanying text.

The Court hastens to observe that this decision does not necessarily leave appellees without remedy should appellants now renew their efforts to terminate the fanchises. As implicitly suggested above, they may seek relief in the Court of Chancery which may well conclude that 6 *Del.C.* § 2551(3) does cover the instant agreements. Alternatively, they may seek to persuade the Commission to adopt a new regulation which does not conflict with the Franchise Security Law (if indeed that be possible). The Court is not insensitive to appellees' plight and is very much aware that these alternative suggestions may well entail substantial delays. However, when the Legislature speaks in terms as strong and unequivocal as those found in Sections 68 and 69 of 59 Del. Laws, c. 107, this Court can do no more than heed its clarion mandate.

In accordance with the foregoing analysis, the Court has determined that the Commission's decisions below must be, and hereby are, reversed.

IT IS SO ORDERED.