DELAWARE ALCOHOLIC BEVERAGE CONTROL COMMISSION and Blue Hen Beverages, Ltd., Appellees-Appellants,

v.

B–F SPIRITS, LTD., an unincorporated division of Brown-Forman Distillers Corporation, and Brown-Forman Distillers Corporation, Appellants-Appellees.

DELAWARE ALCOHOLIC BEVERAGE CONTROL COMMISSION, Appellee-Appellant,

v.

STATE DISTRIBUTORS, INC., Intervenor-Appellant,

v.

CARLTON SALES COMPANY, Appellant-Appellee.

Supreme Court of Delaware.

Submitted March 9, 1981.

Decided April 22, 1981.

Robert W. Willard, Deputy Atty. Gen. (argued), Wilmington, for Delaware Alcoholic Beverage Control Commission.

John E. Babiarz, Jr., and Francis S. Babiarz (argued), of Morris, Nichols, Arsht & Tunnell, Wilmington, for Blue Hen Beverages, Ltd., and State Distributors, Inc.

Michael D. Goldman and Somers S. Price, Jr. (argued), of Potter, Anderson & Corroon, Wilmington, for B-F Spirits, Ltd., and Brown-Forman Distillers Corp.

Joseph A. Hurley (argued), of Paul & Hurley, Wilmington, for Carlton Sales Co.

Before DUFFY, QUILLEN and HORSEY, JJ.

DUFFY, Justice:

The issue determined in these appeals involves an arguable conflict between the Delaware Franchise Security Law and a Rule of the Delaware Alcoholic Beverage Control Commission governing the transfer of a franchise to import alcoholic liquor. We hold that the Statute and the Rule are compatible but that the Rule was not properly applied in this case.

## I

### A.

For many years Blue Hen Beverages, Ltd. (Blue Hen), had distributed in Delaware alcoholic beverage products of Southern Comfort Corporation (Southern Comfort). In 1979 Brown-Forman Distillers Corporation (Brown-Forman) acquired Southern Comfort and, thereafter, State Distributors, Inc. (State Distributors) executed an agreement to acquire all of the stock of Blue Hen. As a result of those changes, the "brand" alignment remained the same but the persons controlling it on each side of the contract were different. Brown-Forman then notified the Delaware Alcoholic Beverage Control Commission (Commission) and Blue Hen that it had decided to terminate its relationship with Blue Hen and assign the distribution rights to a Delaware importer of its choice.

Thereafter, on Blue Hen's application, the Commission approved the transfer of Blue Hen to State Distributors.[1]

At Blue Hen's request, the Commission held a factual hearing, under its Rule 46, on B-F Spirits' decision to terminate the Blue Hen "franchise" and then refused to permit such termination. B-F Spirits appealed to the Superior Court which determined that the Rule on which the Commission had relied was in conflict with the governing Statute and thus was invalid. *B-F Spirits, Ltd. v. Delaware Alcoholic Beverage Control Comm'n.*, Del.Super., 418 A.2d 1014 (1980). The Commission and Blue Hen then docketed an appeal in this Court.

### B.

Carlton Sales Company (Carlton), a wine and beer importer, had also distributed certain of its products in Delaware through Blue Hen. And, after State Distributors had acquired Blue Hen, Carlton also notified the Commission of its intention to terminate the distribution arrangements with Blue Hen. The factual hearing before the Commission included Blue Hen's controversies with Carlton as well as with B-F Spirits. The Commission ruled in Blue Hen's favor on the dispute with Carlton, which appealed to the Superior Court. That Court's ruling on Rule 46 also applied to the Carlton Controversy and the Commission and Blue Hen then appealed to this Court.

\*   \*   \*   \*   \*   \*

The separate appeals were consolidated for briefing and argument and this opinion governs both of them.

## II

As we have indicated, B-F Spirits desires to change its Delaware distributor from Blue Hen to a distributor of its choice. B-F Spirits makes several arguments in support of its right to switch franchisees but only one of those was ruled upon by the Superior Court, namely: the Rule on which the Commission relied in denying B-F Spirits' request to make the transfer was determined to be invalid because the content thereof

---

1. For convenience, we will refer hereafter only to Blue Hen. All comments about its rights and duties apply equally to State Distributors, unless the text indicates otherwise. On the other side of the controversy, we will refer only to B-F Spirits, Ltd. (B-F Spirits), which is, as the caption states, an unincorporated division of Brown-Forman.

has been preempted by the Franchise Security Law (FSL).

■ There is no dispute about what are, for present purposes, the significant terms of the agreement under which Blue Hen has been importing products supplied by B-F Spirits, thus: the franchise was granted on an oral basis in 1960 and was continued on that basis until the present controversy began; a consideration was not paid by Blue Hen for the franchise; and the franchise did not include any understanding or agreement as to termination.

Commission Rule 46 became effective on February 1, 1960 and it reads in part, as follows:

"[N]o distiller, manufacturer, brewery or supplier shall enter into a franchise written or otherwise, for the distribution of spirits, wine or beer to a licensed wholesaler within the State without first having the said franchise approved by the Commission. The Commission may, for cause, refuse to approve the franchise. If an oral franchise has been entered into, the vendor shall submit in writing to the Commission a detailed explanation of the terms of said agreement of franchise. If the franchise is in writing, a copy thereof shall be submitted to the Commission for its approval or disapproval. When the above conditions have been complied with, the Commission may give its immediate approval. If the franchise is approved, the same shall not be transferred or cancelled by the vendor or supplier without first obtaining the permission of the Commission, which may be refused for cause, to do so; nor shall such a transfer or cancellation of such franchise be permitted without ninety days' prior written notice to the Commission and to the licensee then holding such franchise which said notice shall contain the reasons for such transfer or cancellation of the franchise. The distiller, manufacturer, brewery, supplier or the Delaware Wholesaler, holding the franchise may request a hearing before the Commission on the proposed transfer or cancellation within twenty days after notification of such transfer or cancellation. The Commission may waive the ninety-day waiting period if no protests have been filed by the holder of such franchise after the termination of the twenty-day period."

The Franchise Security Law, 6 *Del.C.* § 2551 *et seq.*, was enacted in 1970 and, by its terms, applies to franchises which are defined as follows:

" 'Franchise' means a contract or other arrangement governing the business relationship within this State between a franchised distributor and a franchisor where the franchised distributor is required to pay more than $100 to enter into such contract or other arrangement . . . . "

§ 2551(3).[2]

B-F Spirits contends, and the Superior Court agreed, that Rule 46 was "legislatively voided" by the FSL and certain subsequent modifications to the Liquor Control Act. The basic premise is that the legislative purpose in enacting the FSL was to govern all distributor-supplier relationships. In saying this, B-F Spirits relies on certain language in the preamble to the Act, 57 *Del.Laws*, ch. 693, which reads:

"WHEREAS, the relationship between franchised distributors and their suppliers and licensors is marked by economic dependence of the franchised distributor; and

WHEREAS, the suppliers and licensors of franchised distributors have terminated franchises on short notice without just cause, and have threatened and continued to threaten such termination . . . . "

We agree that a purpose of the FSL is to protect franchise holders and that the Statute applies to franchises to import alcoholic liquor. *Globe Liquor Co. v. Four Roses Distillers Company,* Del.Supr., 281 A.2d 19 (1971), *cert. denied,* 404 U.S. 873, 92 S.Ct. 103, 30 L.Ed.2d 117 (1971). But to say this

---

2.  6 *Del.C.* § 2551 was amended by 62 *Del.Laws,* ch. 352, effective July 9, 1980, to except certain businesses from the $100. consideration requirement, but that does not affect a liquor business of the kind involved in this case.

is not to regard the general language of the preamble as the broad legislative enactment for which B-F Spirits argues. Indeed, to do so would be inconsistent with the specific provision of § 2551(3).

In 6 *Del.C.*, ch. 25, the General Assembly legislates as to various "prohibited trade practices." Certain of those, beginning at § 2551, are directed to franchises. The several provisions thereof, for example, govern the termination of or failure to renew a franchise (§ 2552), provide remedies for violation of the FSL (§ 2553), and specify certain procedural requirements (§ 2554). Cf. *Globe Liquor Co. v. Four Roses Distillers Company*, supra. But fundamental to all of this is the definition which the General Assembly adopted when it settled on the coverage of the Act, i. e., those "franchises" which are to be governed by it. In making that decision, the General Assembly defined a "franchise" as one for which a "distributor is required to pay more than $100 to enter into such contract." We would be hard put to find any uncertainty or ambiguity in that language. And it would be even more difficult to say that the General Assembly did not mean what it plainly said: "[a]s used in" the FSL, "[f]ranchise means a contract" for which the franchisor is "required to pay more than $100 to enter into" it.

The inevitable corollary to the clear language of § 2551(3) is that when a "franchised distributor" is *not* "required to pay more than $100 to enter into such contract or other arrangement," the Act does not apply.

Since it is undisputed that Blue Hen was not required to pay any money to enter into the franchise agreement with B-F Spirits, it necessarily follows that the FSL does not apply to the agreement between those parties.

Citing *In re Dep't. of Natural Resources and Environmental Control*, Del.Super., 401 A.2d 93 (1978), and *Wilmington Country Club v. Delaware Liquor Comm'n.*, Del.Super., 91 A.2d 250 (1952), B-F Spirits argues that a rule adopted by an administrative agency may not be inconsistent with a Statute. The Superior Court so ruled, holding that "insofar as Rule 46 seeks to regulate liquor franchises which fall within the purview of 6 *Del.C.* § 2551(3), the Rule is inconsistent with the Franchise Security Law," 418 A.2d at 1016, and thus is invalid.

We agree that if there is any inconsistency between Rule 46 and the FSL, the former must give way, but that legal principle is not the critical issue. The issue is whether there *is* any inconsistency between the Rule and the Statute. For that reason, a 1973 amendment to the Liquor Control Act, 59 *Del.Laws*, ch. 107 § 4,[3] on which B-F Spirits relies, is not helpful. That amendment is a legislative declaration limiting the rule-making power of the Commission to the adoption of rules and regulations which are not inconsistent with the provisions of any Delaware law. See also 59 *Del.Laws*, ch. 107 §§ 67, 68, 69. Assuming that such provisions do more than codify the general rules announced in *In re Dep't. of Natural Resources and Environmental Control*, supra, and in *Wilmington Country Club*, supra, the crucial question is not the result when there is an inconsistency, but, rather, *is* there an inconsistency between Rule 46 and the FSL.

We find nothing in the FSL which expresses or implies a purpose to void or bar an administrative rule which is otherwise permissible. And we find nothing in it which is inconsistent with the operation of Rule 46 when the Act does not apply. Since Rule 46 is not inconsistent with the Franchise Security Law in that respect, the Rule is not barred by 4 *Del.C.* § 304(a)(2).

---

**3.** That amendment, now appearing in 4 *Del.C.* § 304(a)(2), provides (in part) that the Commission shall:

"Establish by rules and regulations an effective control of the business of manufacture, sale, dispensation, distribution and importation of alcoholic liquors within and into the State, including the time, place and manner in which alcoholic liquors shall be sold and dispensed, *not inconsistent with the provisions of this title or with the provisions of any other law of this State*." (emphasis supplied)

In its consideration of Rule 46 and the Franchise Security Law, the Superior Court concluded that the Rule conflicted with the FSL because it "does not differentiate between those liquor franchises which are included in § 2551(3) and those which arguably are not." 418 A.2d at 1017. It did not cite any authority for that proposition. The difficulty with such ruling is that it looks to the purpose of Rule 46 and the Franchise Security Law and assumes that the Legislature intended to bar Commission jurisdiction over agreements which the Legislature had not included in the FSL; the Court thus ascribed to the Assembly an intent to deregulate certain liquor franchises. We are unable to agree with that analysis.

Our reading of the Franchise Security Law and of Rule 46 is, we think, consonant with the obvious purpose of both of them: to protect franchisees by giving them an opportunity to be heard before the transfer or termination of a franchise. If B-F Spirits' arguments were accepted, then liquor franchises for which less than $100 had been paid would be exempt from State (franchise) regulation. While that may be an intended result in an unregulated industry, we cannot say that it applies to the alcoholic liquor business which is governed by a Control Act giving the Commission power and the responsibility to "[e]stablish by rules and regulations an effective control of the . . . importation of alcoholic liquors within and into the State" of Delaware. 4 Del.C. § 304(a)(2).

### III

We turn now to the Commission's decision refusing to permit B-F Spirits to terminate the Blue Hen franchise and assign it to a different Delaware wholesaler.

After hearing, the Commission concluded in its decision and order that,

"[T]he distribution of Southern Comfort [shall] remain with the licensee [Blue Hen] because it showed cause why its franchise should not be cancelled, in that

it has been an effective distributor, and has showed no decline in sales, but rather a substantial increase."

In a word, the Commission equated the "cause" required to be shown by Rule 46 with an increase in sales.

The evidence before the Commission ranged over a number of issues concerning the relationship between B-F Spirits and Blue Hen, but the Commission based its order solely on a finding as to increased sales and we must test the validity of that order by the reason given for it. Any other approach, as we see it, would necessarily involve speculation as to the Commission's views on other aspects of the controversy.

We read Rule 46 as presumptively permitting a manufacturer to transfer (or cancel) a franchise upon notice to the Commission and compliance with whatever reasonable procedures are related thereto.[4] At oral argument, the Commission's counsel agreed with that view, which is consistent, so we understand, with the Commission's prior application of the Rule. Given the presumptive right of the manufacturer to make the transfer, it follows that the burden is on anyone (whether the Commission itself or a party adverse to the manufacturer) opposing the transfer to establish cause as required by the Rule.

B-F Spirits argues that Rule 46 is invalid because the term "cause" as used therein is vague and indefinite and thus violates both the Federal and State Constitutions. See *Connally v. General Construction Co.,* 269 U.S. 385, 395, 46 S.Ct. 126, 129, 70 L.Ed. 322 (1926). Compare *Brown-Forman Distillers Corp. v. Stewart,* Mo.Supr., 520 S.W.2d 1, 9 (1975).

The word "cause" has many different meanings in law, natural science, philosophy and other branches of knowledge. It is used as a noun, an adjective and a verb. In short, the possible uses of the word are legion. See *Webster's New International Dictionary* (2 ed. unabridged). Some of the

---

4. In this opinion we consider only the impact of Rule 46 on the right of the manufacturer to make a transfer. We assume that such transfer is not otherwise barred or limited by contract between the parties.

cases in which courts have discussed the word appear in 6 *Words and Phrases* (perm. ed.), pp. 531–52. So far as we can determine, as used in Rule 46, "cause" does not have any technical or other special meaning well enough known within the alcoholic beverage industry to enable persons engaged in it to understand and correctly apply it. *Connally*, supra, 46 *S.Ct.* at 127. Compare the provision in the FSL which deems termination of a franchise as " 'unjust' " if done "without good cause or in bad faith." 6 *Del.C.* § 2552(a). This Court has held that such language is not unconstitutional on vagueness grounds. *Globe Liquor Co.*, supra, 281 A.2d at 22.

We have serious doubt that the "cause" requirement of Rule 46 passes the vagueness test, but we need not strike it down in this case on that ground. Giving the Commission the benefit of any doubt and assuming that as applied under its Rule, "cause" means "good cause" and/or that "bad faith" must be shown, *Globe Liquor Co.*, supra, even that assumed standard is not helpful to Blue Hen or to the Commission. We say this because a mere showing of a "substantial increase" in sales of a product does not by any stretch of the imagination establish cause in law why a manufacturer should be compelled to continue with an unwanted commercial relationship. At minimum, a mere increase in sales, without more, does not reflect any relationship to comparative performance of the competition nor to performance of the same brand in a different market; it says nothing about expenses or profits; and, significantly, it ignores the personal relationships which may be even more important than sales figures. In short, a "substantial increase" in sales does not amount to the requisite showing of cause to compel a manufacturer to continue a franchise arrangement which it otherwise has a right to terminate.

\* \* \* \* \* \*

It is unnecessary to consider other contentions made by B-F Spirits. The judgment of the Superior Court is affirmed.