391 So.2d 681 (1980)
PARK BENZIGER & CO., INC., Appellant,
v.
SOUTHERN WINE & SPIRITS, INC., Appellee.
No. 58916.
Supreme Court of Florida.
December 11, 1980.
Angus M. Stephens, Jr., Coral Gables, for appellant.
Thomas E. Lee, Jr. of Lee, Murphy & Coe, Miami, for appellee.
John M. Johnston and Robert G. Haile, Jr. of White & Case, Palm Beach, for Distilled *682 Spirits Counsel of the United States, Inc., amicus curiae.
McDONALD, Justice.
In an action for declaratory relief brought by Park Benziger & Co., the trial judge passed upon the constitutionality of section 565.095, Florida Statutes, which deals with the distribution and sale of intoxicating liquor. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. (1972).
The issues sought to be determined are (1) whether the statute is applicable to distributor contracts in existence on the statute's effective date, (2) whether a manufacturer or its representative may withdraw a particular brand or label of spirituous or vinous beverage from a distributor without going through the procedure prescribed by section 565.095(5),[1] and (3) whether such a manufacturer may appoint an additional distributor or distributors when that manufacturer has an existing distributor without first terminating the existing distributor in accordance with the provisions of section 565.095.
We hold that the statute cannot be applied to distributor contracts in existence prior to July 1, 1978, and decline to answer the other questions.
Acting under an oral contract with Park Benziger & Co., Southern Wine and Spirits had been the exclusive Florida distributor of a Scottish whiskey labeled "Old Rarity" for approximately eight years prior to July 1, 1978. Since no termination date for this contract existed, it was terminable at will by either party. § 672.309, Fla. Stat.
After July 1, 1978, Park Benziger, dissatisfied with the sales level of Old Rarity, asked Southern either to give up Old Rarity or to allow Park Benziger to appoint a second distributor in addition to Southern. Southern objected and claimed that section 565.095(5) precludes the supplier from doing either of those things. Unsure of its position under the statute, Park Benziger sued in circuit court for declaratory relief. The trial judge ruled that the statute is constitutional, that it applied to the parties to this action, and that the manufacturer cannot appoint an additional distributor without going through the procedure set forth in the act. In doing so he did not directly address the question of whether the act *683 impermissibly impaired the terms of contracts in existence prior to the statute's effective date.
The twenty-first amendment to the United States Constitution recognizes the authority of a state to regulate the sale and distribution of liquor within its borders. A state may determine the conditions upon which liquor can come into its territory and what will be done with it after it gets there. United States v. Frankfort Distilleries, Inc., 324 U.S. 293, 65 S.Ct. 661, 89 L.Ed. 951 (1945). In upholding New York's Price Affirmation Act (which was similar to section 565.15 of the Florida Statutes) the United States Supreme Court affirmed this authority and recognized the state's power in this regard. Joseph E. Seagram & Sons, Inc. v. Hostetter, 384 U.S. 35, 86 S.Ct. 1254, 16 L.Ed.2d 336 (1966). In California v. LaRue, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972), that Court upheld the prohibition of the sale of alcohol by the drink in establishments that permitted certain types of dancing and nudity.
But the fact that intoxicating beverages is the subject matter of legislation does not automatically make such legislation valid, and such an act must fall if it violates a constitutional prohibition. In Craig v. Boren, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), the Court struck down an Oklahoma law setting the drinking age for males at 21 and for females at 18 as a violation of equal protection. In Hostetter v. Idlewild Bon Voyage Liquor Corp., 377 U.S. 324, 84 S.Ct. 1293, 12 L.Ed.2d 350 (1964), the Supreme Court held that New York's liquor licensing law did not extend to a company headquartered at the New York Port Authority whose sale of liquor commenced outside the continental limits of the United States. This Court in Division of Beverage, Dep't. of Business Regulation v. Bonanni Ship Supply, Inc., 356 So.2d 308 (Fla. 1978), held that a statute regulating export activity of "in bond" liquor was subject to a previous federal regulatory scheme and was, therefore, in violation of the commerce clause of the United States Constitution.
Both the United States and the Florida Constitutions provide that no law impairing the obligation of contracts shall be passed.[2] Exceptions have been made to the strict application of these provisions when there was an overriding necessity for the state to exercise its police powers, but virtually no degree of contract impairment has been tolerated in this state. Yamaha Parts Distributors, Inc. v. Ehrman, 316 So.2d 557 (Fla. 1975).
We are unable to discern in this statute a public purpose of sufficient need to authorize an impairment of existing contractual agreements. The trial judge opined that its purpose was the prevention of the "tied-house evil".[3] This is not clear from the statute itself nor from any history of its enactment, but if this were the purpose, that objective does not create sufficient need for the exercise of police power in conflict with these parties' constitutional rights.[4]
In Pomponio v. Claridge of Pompano Condominium, Inc., 378 So.2d 774 (Fla. 1979), we discussed the analysis to be performed in deciding whether a statute unconstitutionally impairs the obligation of a contract:
To determine how much impairment is tolerable, we must weigh the degree to which a party's contract rights are statutorily impaired against both the source of authority under which the state purports to alter the contractual relationship and the evil which it seeks to remedy. Obviously, this becomes a balancing process to determine whether the nature and extent *684 of the impairment is constitutionally tolerable in light of the importance of the state's objective, or whether it unreasonably intrudes into the parties' bargain to a degree greater than is necessary to achieve that objective.
Id. at 780.
We agree with Park Benziger's contention that section 565.095(5) cannot be applied to the instant contract. If the statute were applied here, the contract originally terminable at the will of either party would become one in which one party (the supplier) could terminate only upon a showing of good cause to an administrative agency.[5]
This finding, which authorizes the termination of the distributorship agreement at the will of either party, settles the controversy between these parties. We therefore refrain from addressing the other constitutional challenges or questions involving the statute's interpretation.
This cause is remanded to the circuit court for entry of judgment consistent with this opinion.
It is so ordered.
SUNDBERG, C.J., and ADKINS, BOYD, OVERTON, ENGLAND and ALDERMAN, JJ., concur.
NOTES
[1] § 565.095(5), effective July 1, 1978, reads as follows:

WITHDRAWAL OF REGISTERED BRAND OR LABEL. No brand or label registered hereunder or any brand or label of wine may be withdrawn from any distributor after it has been sold by a manufacturer to any distributor unless good cause for its withdrawal is shown by the manufacturer. Withdrawal of a registered brand or label by a manufacturer shall be permitted only if written notice is sent by certified mail to any distributor carrying the manufacturer's brand or label to the division prior to its withdrawal. If no objection is lodged with the division by a distributor carrying the brand or label intended to be withdrawn within the time as hereinafter set forth, the brand or label may be withdrawn without a showing of good cause 60 days after the division's receipt of the manufacturer's notice of intent to withdraw. Any distributor carrying the brand or label or line who objects to its withdrawal shall file its written objection by mail with the division and the manufacturer within 60 days from its receipt of the manufacturer's notice of intent to withdraw. The distributor's objection shall be deemed a petition for declaratory statement, must comply with the division's administrative rule for such petitions, and shall be disposed of thereby. In rendering its decision, the division shall consider the reasons given by the manufacturer to justify the withdrawal and the distributor's reason against the withdrawal. If the division determines that good cause to justify the withdrawal is absent, the division may prohibit the brand or label from being withdrawn, and failure on the part of the manufacturer so prohibited to ship the distributor a reasonable amount of the brand sought to be withdrawn will result in the withdrawal from sale in this state of all its brands. All distributors carrying a particular brand or label of spirituous or vinous beverages as of July 1, 1978 shall be deemed to be the distributors for the manufacturers of such brands or labels. No other distributors may be appointed by any manufacturer or representative of a manufacturer to carry the brands or labels already distributed on July 1, 1978 unless the division first approves the withdrawal from the existing distributor pursuant to this act. The purchase of any spirituous or vinous beverages by any licensed wholesaler or distributor from any manufacturer who has not complied with the provisions of this subsection is prohibited.
[2] U.S.Const., art. I, § 10, cl. 1; art. 1, § 10, Fla. Const.
[3] "Tied-house evil" is the monopolistic control of distributors by manufacturers of intoxicating liquors. See Pickerill v. Schott, 55 So.2d 716 (Fla. 1951).
[4] The importance of this statute to the state is far less than the curative statute dealing with road contracts which this Court, by a narrow margin, said could not impair contracts in State, Dep't. of Transp. v. Edward M. Chadbourne, Inc., 382 So.2d 293 (Fla. 1980).
[5] The Supreme Court of Delaware reached a similar conclusion on a similar fact situation in Globe Liquor Co. v. Four Roses Distillers Co., 281 A.2d 19 (Del. 1971), cert. denied 404 U.S. 873, 92 S.Ct. 103, 30 L.Ed.2d 117 (1971).