## CIRCUIT COURT OF FAIRFAX COUNTY

Heublein, Inc.

v.

Department of Alcoholic Beverage Control,
Globe Distributing Co.,
and Virginia Imports, Inc.

Case No. (Chancery) 93412

Virginia Imports, Ltd.

v.

Heublein, Inc.

Case No. (Chancery) 92943

Globe Distributing Co.

v.

Heublein, Inc.

Case No. (Chancery) 93041

By JUDGE THOMAS A. FORTKORT

July 31, 1985

This case originally came before our Circuit Court on a petition for injunction filed by Virginia Imports, Ltd., against Heublein, Inc. On July 8, 1985, the Honorable F. Bruce Bach entered ex parte, a Temporary Injunction Decree against Heublein. On July 15, 1985, Globe Distributing Company requested a similar injunction against Heublein which was granted on July 16, 1985, by this Court. The matters then were consolidated and set for legal argument on July 29, 1985, as to whether the injunctions should remain in effect pending a hearing before the State Alcohol Beverage Control Board.

Each party submitted extensive memoranda and the case was argued by all parties. Defendant Heublein has appealed the order of Judge Bach to meet a 15 day statutory deadline but this hearing represents the first contested hearing on the preliminary injunction by the parties. The Court after hearing argument decided to render a written opinion and took the matter under advisement.

The Wine Franchise Act in its most recent form was passed by the Virginia Legislature at its 1985 Session and under Section 4-118.38 of the Virginia Code became effective January 1, 1985.

Wine Franchise Acts are not a Virginia creation and exist in various forms in several states. The Acts generally set rules for the relationship of Distilleries and Vineyards at the top level with wholesalers and retailers in a three tier relationship.

The issues presented in this cause are (1) whether the retroactive clause of Section 4-118.38 of the Wine Franchise Act impairs the obligation of contract contrary to the United States and Virginia Constitutions, or (2) whether Section 4-25.1 which exempts Virginia wineries from compliance with the act creates favored treatment for Virginia Wineries against out of state competition in derogation of the Commerce Clause of the Federal Constitution.

The resolution of these issues must fall in context of the action sought in this case, i.e., an injunction

pending a hearing before the Alcoholic Beverage Control Board. To prevail, Virginia Imports and Globe must show a likelihood of irreparable harm, that they will prevail on the merits and that there is no adequate remedy at law.

The Court will accept arguendo that the petitioners will be harmed by loss of their retail outlets, that the full extent of such loss may be difficult or impossible to measure, and there is no adequate remedy at law. Further factual development might rebut this generous presumption but the Court at this time recognizes petitioner's claim balanced against Heublein's relatively secure position in regard to damages.

The third issue is the most troublesome. The likelihood of the petitioner's prevailing on the merits is tied to the constitutionality of the Wine Franchise Act.

The Twenty-first Amendment which repealed prohibition left the states with broad powers to control the distribution of alcoholic spirits within a state. In an early Commerce Clause case which challenged a fee imposed by California for the privilege of importing beer, Justice Brandeis held the Twenty-first Amendment granted the individual states wide powers to regulate alcohol even if it infringed upon other clauses of the Constitution. In the case of *State Board of Equalization v. Young's Market Co.*, 299 U.S. 59, 81 L. Ed. 38, 57 S. Ct. 77 (1936), Justice Brandeis powerfully stated the immense power of the state over alcohol distribution by rejecting the plaintiff's argument in these words:

> The State may prohibit the importation of intoxicating liquors provided it prohibits the manufacture and sale within its borders; but if it permits such manufacture and sale, it must let imported liquors compete with the domestic on equal terms. To say that, would involve not a construction of the Amendment but a rewriting of it.

Rewriting of the Twenty-first Amendment or not, the proposition advanced by the plaintiff in *Young's Market* and rejected by Justice Brandeis, is a closer approximation of the current state of constitutional

interpretation than the broad interpretation advanced by Justice Brandeis.

Today's Courts will speak in terms of balancing the effect on interstate commerce against the state's interest in maintaining temperance. It is clear that the intrusion on interstate commerce must be either minimal or directly related to temperance to pass constitutional scrutiny.

The case of *Loretto Winery Ltd. v. Gazzara*, 601 F. Supp. 850 (S.D. N.Y. 1985), is instructive. New York passed a Statute permitting retail sales in grocery stores, of a wine produced exclusively from grapes grown in New York State and containing not more than 6% alcohol. The limited amount of alcohol permitted was clearly related to temperance objectives, but the preferential treatment of New York grapes was a burden on interstate commerce.

The Federal District Court balanced the equities in this manner at page 863:

> Once it was decided that a 6% wine product will be sold in grocery stores instead of a 7% product, the interest in temperance ends. Although the state may still promote that interest in temperance by continuing to prohibit the sale in retail stores of a product with a higher alcoholic content. . . . it must do so in an even handed manner.

The Virginia Farm Winery exemption forbids a farm winery to produce wine containing more than twenty-five percent of fruits grown outside the Commonwealth.

The Wine Franchise Act is clearly a burden on interstate commerce. The exemption of Virginia grown products from the same regulatory burden serves no temperance function and is patently unconstitutional.

Because the Wine Franchise Act provides a severability clause, it is arguable that the wholesalers in the instant case would not be affected by the Farm Winery exemption's constitutional status. Thus, we must examine the effect of the constitutional prohibition against impairment of contracts in this case.

As I alluded to earlier in the opinion, the Virginia Wine Franchise Act is not a new concept and the Act itself

is not new in Virginia. A prior enactment, far less detailed, failed because the court felt that a general requirement that contracts could not be terminated except for "good cause" was too vague a standard to be enforced. *Vintage Imports v. Seagrams*, 409 F. Supp. 497 (E.D. Va. 1975). The legislature repealed this act in 1978.

As a general rule, the state has power to impair the obligations of contract. The constitutional restraint on that power is measured in the case of *Allied Structural Steel v. Spannaus*, 438 U.S. 234, 98 S. Ct. 2716, 57 L. Ed. 2d 727 (1978), in these words: "The severity of the impairment measures the height of the hurdle the State Legislature must clear."

State legislation under the Twenty-first Amendment with clearly defined societal purposes as is true with this Virginia statute carry a powerful presumption of validity. On the other hand, the changing of a contract from an "at will" relationship to a permanent relationship whose termination can only be for good cause as determined by the application of statutory definitions before an administrative agency is a very substantial impairment of the right to contract.

Other courts have dealt with this issue. A Delaware court felt the Delaware Act which forced a distillery to deal with a wholesaler under limited conditions of termination was unconstitutional as impairing the obligation of contract. *Globe Liquor Co. v. Four Roses Distillers Company*, 261 A.2d 19 (R.I. 1970).

A Florida Court totally rejected the Twenty-first Amendment powers of the state to impair contracts dealing with liquor distributorships holding that no public purpose was served by exercising this power. *Park Benziger & Co. v. Southern Wine and Spirits, Inc.*, 391 So. 2d 681 (Fla. 1980).

In opposition a Connecticut case *Schieffelin and Co. v. Dept. of Liquor*, 479 A.2d 1191 (Conn. 1984), upheld the constitutionality of a Connecticut statutory change in its wine franchise act which reduced the time for the "good cause" requirement from a 24-month contractual existence to a six-month relationship. The Connecticut Court found that the parties knowing that they were dealing in a heavily regulated industry should have anticipated

further regulation. The principle of *Schieffelin* is embodied in these words at page 178 *supra*:

> No matter how severe the impairment, a state regulation which does no more than restrict a party to gains it reasonably expected from the contract does not necessarily constitute a substantial impairment within the meaning of the contract clause.

At any rate, these cases all demonstrate that the constitutionality of the Wine Franchise Act on the issue of impairment of contracts is at least questionable as to their overall scheme and even more so when sought to be applied to existing contracts.

The Court therefore denies the preliminary injunction in view of the existence of serious constitutional questions and the failure of the petitioners to demonstrate sufficiently good chance to prevail on the merits in these cases.

January 9, 1986

This cause involves a constitutional challenge to the Virginia Wine Franchise Act (Sections 4-118.21 et seq. of the 1950 Code of Virginia, as amended) on various grounds.

The plaintiff, Heublein, is a supplier of various wines and spirits, nationwide and in foreign markets. Under the general usage in the three tier distribution system of winery, distributor and retailer, Heublein is a winery.

The defendants are Virginia Imports, Ltd., and Globe Distributing Co., both distributors, and the Virginia Alcoholic Beverage Control Board. Other distributors, once individual defendants, withdrew and agreed to be bound by the decision of the Court. The Virginia Association of Wine Wholesalers was permitted to enter the case and participated in all meaningful court actions resulting from Heublein's suit.

This memorandum opinion consists of two parts. The findings of fact part is followed by the Court's rulings on the various constitutional issues in this case.

## PART I

*Findings of Fact*

Numerous depositions and exhibits were submitted to the Court along with the testimony of several witnesses. Certain factual findings are made in aid of the constitutional issues.

1. The contracts between the wineries and the distributors are universally "terminable at will." The vast majority of contracts between wineries and distributors are oral contracts, terminable at will by either party. The few written contracts are also "terminable at will" with short notice provisions. The wineries have continuously maintained their contracts to be "terminable at will" and many distributors support this contention.

1A. The defendants assert that while the wineries maintained their right to "terminate at will," the actual custom and usage of the trade is that terminations are for good cause shown.

The evidence does not support this contention. While on several occasions distributors were terminated for "good cause," and even though several wineries and brokers made it a policy to maintain distributors, unless "good cause" dictated termination, the practice was not universal. Clear evidence revealed that several terminations were arbitrary and a simple exercise of the wineries' option to terminate at will.

2. Despite protestations to the contrary, the farm winery exemption was placed in the Wine Franchise Act by the Distributors Association, to eliminate any possible opposition to the bill by Virginia farm wineries.

4. The sale of wines in ABC stores, while a small percentage of total Virginia wine sales, is not inconsequential. The sales in ABC stores in recent years would be roughly equal to double of average number of liters of wine sold by a single distributor in a year.

5. The proposed exclusive sale of Virginia wines in State liquor stores will provide a strong economic advantage for Virginia wines over competitors from out of state. (For example, Exhibit 400,000 details some of the advantages that the ABC stores have over other retailers in the sale of wine.) Virginia wineries currently have

a tiny share of the Virginia wine market, but the growth of the wineries and their potential sales are significant.

6. Distributors' fears that future enactment of the Wine Franchise Act would lead to winery retaliation in the forms of terminations or setting up of dual distributorships was supported by the experience in other states where wine franchise acts were being proposed.

7. Distributors' contention that without the act, wineries would impose unrealistic sales quotas which would, in turn, cause the distributors to violate ABC laws in order to meet these quotas, is not supported by the evidence.

8. There is evidence that the control of local distributors through the three tier system does allow for orderly marketing and adherence to the rules promulgated by the ABC board.

9. The Farm Winery bill passed both houses of the Legislature with a substantial vote. The legislative history in the House indicates that its members were aware that should the farm winery exemption be found unconstitutional, it could be severed from the bill in the opinion of the chief patron of the House bill.

In the Senate, the House bill was amended to increase the number of liters in the exemption so that all Virginia wineries would be covered. There is no evidence of legislative history as to the effect of the severability clauses.

The House bill narrowly escaped defeat in the Senate Committee, passing by an eight to seven affirmative vote. The Court in cognizance of this vote, and in recognizing past successes of the farm winery group, could conclude that the bill would be doomed if the farm wineries objected to its passage.

Nevertheless, there is no evidence that the farm wineries were unhappy with the bill or with the severability clause. Certainly, the House of Delegates in full recognition of the possibility that the farm winery exemption could be severed, still voted overwhelmingly for the bill. Thus, the Court concludes that the legislative history in the House supports the proposition that the bill would pass with or without the farm winery exemption. There is no hard evidence to conclude what the Senate may have done had the proposition of the severability of the farm

winery exemption been as clearly posed as it was in the House of Delegates.

## PART II

### *Rulings of Law*

I. The Court finds the Farm Winery Exemption in the Wine Franchise Act to be unconstitutional under the decisions in *Bacchus Import, Ltd. v. Dias*, 82 L. Ed. 2d 200 (1984). The Court's prior opinion on this subject is adopted and the current hearings provided no factual evidence or legal analysis that convinces this Court that its previous ruling was erroneous.

II. The Constitutional prohibition against the impairment of contract appears in the United States Constitution in Article I, Section 10, and in Article I, Section 11, of the Virginia Constitution. Both Constitutions prohibit the impairment of the obligation of contract by passing a legislative act.

If the courts had strictly construed this language, many states and federal legislative acts would be found unconstitutional. Early Supreme Court cases followed the rule in *Edwards v. Kearzey*, 96 U.S. 595 (1877):

> The remedy subsisting in a State when and where a contract is made and is to be performed, is part of the obligation; and any subsequent law of the State which so affects that remedy as to impair and lessen the value of the contract is forbidden by the Constitution of the United States and is therefore void.

That language would appear to forbid any legislative act that would prevent a recovery or enforce existing contracts.

State courts uniformly made distinctions in the conflict of legislation against contractually accrued rights. Some courts, as was true in Virginia, distinguished between vested rights obtained after judgment and rights that affected future remedies. *Town of Danville v. Pace*, 66 Va. (25 Gratt.) 1 (1874); *Merchants Bank of Danville*

*v. Ballou,* 98 Va. 112 (1899). The concept that contracts were subject to legislative enactments developed in early American law.

The balancing between the police power of the state to pass laws for the common good and the constitutional prohibition against impairment of contract was always done in American courts. Its reduction by the Supreme Court to a more formulated test in *Home Building and Loan Association v. Blaisdell,* 290 U.S. 398 (1934), and more recently in *Allied Structural Steel v. Spannaus,* 438 U.S. 234 (1978), brings the Supreme Court into alignment with early state court decisions.

The background above is useful in forming some conclusions about the Virginia Wine Franchise Act. It is unlikely that given the long history in Virginia in tolerating legislative acts that infringe on the obligation of contract, that the Virginia courts would construe the constitutional provision against impairing contracts as strictly as the Florida Court in *Park Benziger & Company v. Southern Wine & Spirits, Inc.,* 391 So. 2d 681 (Fla. 1980), or the Delaware Court in *Globe Liquor Company v. Four Roses Distillers Company,* 281 A.2d 19 (Del. 1971).

The next question is caused by what this Court perceives as a shift on Twenty-first Amendment cases by the Supreme Court.

Early cases of the Supreme Court gave broad and almost unlimited power to the State to regulate alcohol under the Twenty-first Amendment. The cases of *Bacchus Imports, Ltd. v. Dias,* 104 S. Ct. 3049 (1984), and the lower Federal Court opinion in *Loretto Winery, Ltd. v. Gazzara,* 601 F. Supp. 850 (S.D. N.Y. 1985), *aff'd.* 761 F.2d 140 (2d Cir. 1985), indicate that favored treatment of local business in violation of the commerce clause will be found unconstitutional even if the States' Twenty-first Amendment power to regulate alcohol is involved but where no temperance objective is advanced.

The Court's brief survey of other states' alcohol control acts reveals many attempts to protect local alcohol products. The favored treatment of Virginia farm wineries falls under the *Loretto and Bacchus* rule and as previously stated makes the farm winery exemption to the Wine Franchise Act unconstitutional.

The next question is key to this entire case. If the Supreme Court will now look to temperance objectives to measure Commerce Clause violations, will the same temperance objectives be used in balancing impairment of contract cases?

I think not. The traditional analysis of an impairment of contract case is given by the Virginia Supreme Court in *Waterman's Association v. Seafood, Inc.*, 227 Va. 101, page 111 (1984), quoting from *Allied Structural Steel v. Spannaus*, 438 U.S. at 244.

> The severity of the impairment measures the height of the hurdle the state legislation must clear. Minimal alteration of contractual obligations may end the inquiry. Severe impairment, on the other hand, will push the inquiry to a careful examination of the nature and purpose of state legislation.

In our case, there is no question that the change of an "at will" contract to a regulatory enforcement procedure is a severe alteration of contractual obligations.

It is in measuring the nature and purpose of this legislation that the Twenty-first Amendment is controlling. If the State Act unfairly separates local businesses from a group or a class affected by the regulation, and such local businesses benefit thereby, the legislation is violative of the Commerce Clause. If the particular legislation concerns alcoholic beverages, then the state has the burden to show a temperance objective in its action.

If, on the other hand, the state passes regulations which control the sale and distribution of alcoholic spirits, without any discrimination among the affected parties, but which substantially impair contracts, the second test of the analysis is met by the grant of power to the state under the Twenty-first Amendment. Further inquiry into societal interest, or reasonable relationship to societal interest is unnecessary.

The difference between the Commerce Clause and the impairment of the obligation of contract is that the Twenty-first Amendment is a grant of power to the state to regulate the sale and distribution of alcoholic beverages. The state exercise of that power necessarily embraces

the power to impair the obligation of contract. The exercise of the Twenty-first Amendment does not grant the power to discriminate against out-of-state entities in violation of the Commerce Clause.

The case at bar is not factually dissimilar to the case of *Garris v. Hanover, Inc. Co.*, 630 F.2d 1001 (4th Cir. 1980). In *Garris*, insurance agents attempted to retain control over clients by securing passage of an act which limited drivers to procurement of insurance through agents they were currently dealing with. The legislation was proposed to aid in the enforcement of compulsory insurance laws. The *Garris* Court found no societal interest in the legislative scheme and held that the substantial impairment of contracts was therefore unconstitutional.

How does *Garris* differ from Heublein? In the opinion of this Court, when the Legislature is acting within its Twenty-first Amendment power, the societal interest is presumed. The only inquiry that the Court need make is whether the act unfairly discriminates against any party. Absent that finding, the act will pass constitutional muster under the Federal Constitution.

III. The 1874 case of *Town of Danville v. Pace*, 66 Va. (25 Gratt.) 1 (1874), gives a thorough discussion of American law concerning legislative enactment of retrospective legislation and its effect upon the impairment of contracts proscribed in the Federal Constitution. The Virginia Court found little difficulty in upholding retrospective legislation in this quote from the *Danville* case at page 10; citing the case of *Satterlee v. Matthewson*, 27 U.S. (2 Peters) 380, 412 (1829), a Federal case:

> Now this law may be censured as an unwise and unjust exercise of legislative power, as retrospective in its operation, as the exercise by the legislature of judicial functions, and as creating a contract where none previously existed. All this may be admitted, but the great question which we are now considering is, does it impair the obligation of contract? It is not easy to perceive how a law which gives validity to a void contract can be said to impair

the obligation of that contract. It cannot be intended that to create a contract between the parties where none existed and to impair one, mean the same thing.

The Virginia Court then restates the principle in these clear words at page 10 of the *Danville* case:

This case, and indeed all the cases, establish the position that even though a statute may take away vested rights by reason of its retrospective operation, it cannot, for that reason merely, be treated as repugnant to any provision contained in the Constitution of the United States.

The mere retroactivity of a statute even where that statute affects vested rights does not make the statute unconstitutional. This remains the Virginia rule to this day.

Cases subsequent to *Danville* often state that retroactive laws are valid unless they impair the obligation of contract. *See, Eaton v. Davis*, 176 Va. 330 (1940); *Whitlock v. Hawkins*, 105 Va. 242 (1906); *Commonwealth v. The United Cigarette Machine Company Limited*, 120 Va. 835 (1917). It would appear that the combination of retroactivity plus impairment of contract would make a statute unconstitutional. That is not the case. A careful reading of these cases reveals that the Court's inquiry in every case is to examine the *extent* of the contract impairment. Thus, in *Merchant's Bank v. Ballou*, 98 Va. 112 (1899), the Court finds that a judgment is such a vested right of property that the Legislature cannot by retroactive legislation either destroy or diminish its value. A contract providing for future alimony as opposed to a judgment for arrearages is not a vested right and can be changed by retroactive legislation. *Eaton v. Davis*, 176 Va. 330 (1940).

In addition to *Merchant's Bank v. Ballou, supra*, the case of *Whitlock v. Hawkins*, 105 Va. 242 (1906), found the retroactive effect of a section of a curative tax statute to be unconstitutional as violative of due process. One of the statutory provisions which provided a

taxpayer a hearing as to the correctness of his tax assessment was eliminated by retroactively taking all prior assessments as valid and providing for appeal hearings at a future date. The Court held that taxpayers were deprived of their right to property without due process and applied the section in conflict prospectively rather than declare the entire act unconstitutional.

The case above is distinguished from the case at bar in that the right to due process is absolute while impairment of contract analysis balances the impairment against a competing state interest to determine constitutionality.

In the present case, Heublein claims its contractual rights are impaired because it cannot terminate existing contracts with distributors. If the Wine Franchise Act is valid, Heublein cannot terminate its distributors without going through the administrative process of the Act. When the Act is applied retroactively, Heublein loses an opportunity to terminate its distributors at will, for the six-month period between when the Act was made effective, January 1, 1985, and what would ordinarily be its effective date July 1, 1985.

The Wine Franchise Act impairs the obligation of contract in the same manner whether applied prospectively or retrospectively. Heublein's loss of the window of opportunity to terminate does not in and of itself give rise to a constitutional impairment of contract.

Since Virginia courts have long held that retroactive legislation in and of itself does not create a constitutional impediment, then the act of retroactively applying an effective date, need only meet the due process test that it is reasonably related to a proper legislative purpose.

In the case at bar, ample evidence suggests that the windows of opportunity created by a prospective effective date would be used by wineries and suppliers to terminate distributors at will in retaliation for passage of the Act, as is reported to have occurred in other states where similar Acts were passed. The effective date was clearly a legislative response to a perceived need and directly related to the purposes of the Act itself. Thus, the early effective date does not create an additional unconstitutional issue. The legislation must stand or

fall upon the general principles enunciated in Part II of this opinion.

IV. Alcoholic beverages fall into three general classes, beer, wine and spirits. Spirits are distributed solely through Virginia's 236 retail ABC stores. Beer is distributed through beer distributors to retail stores. Beer is not sold in ABC stores.

Wine is sold in both ABC stores and through distributors to retail stores. One local brewery and several farm wineries may sell their product on site under controlled circumstances at the retail level. Farm wineries are permitted to act as their own distributors.

On July 1, 1986, only Virginia farm wines will be permitted to be sold in ABC retail outlets.

Plaintiff complains that the exclusive retailing and promotion of Virginia farm wines in ABC stores will make the ABC Board a competitor of out-of-state wineries such as Heublein. In fact, the current phasing out of wine sales in ABC stores is affecting Heublein's sales in Virginia. Further, the largest single complaint to the ABC Board from the general public is the unavailability of wine in ABC retail stores.

Defendants have argued that the sale of Virginia wines constitutes such a small portion of the total Virginia wine market that any effect is de minimis. The current dollar amount of wine sales, the past complaints of the distributors against the sale of wine in ABC retail stores and the future potential of the exclusive sale of Virginia wine in ABC stores, belies such a contention.

In the opinion of this Court, perhaps gratuitously, is that the exclusive sale of Virginia wines in ABC retail stores is unconstitutional as violative of the Commerce Clause.

Nevertheless, the question presented here is whether the ABC Commission's actions as an administrative body are compromised by its activity as promoter and retailer of Virginia Farm Wines.

No doubt, the ABC Board's triple functions of control, service and revenue do inherently conflict with each other. Service and revenue are achieved by supply and sales while control is achieved by limiting sales and availability. Nevertheless, the ABC Board achieves an admirable blend

of these functions by limiting advertising and aggressive sales of alcoholic products. Alcohol is available to those Virginians who wish to purchase it in reasonably attractive settings.

The placing of the sale and promotion of Virginia wines in the ABC Board creates the appearance of a direct conflict with the control function of the board. The ABC stores simply should not be in the business of selling Virginia wines to the exclusion of all others.

Even though this Court views the legislation creating this exclusive bridge between the ABC stores and the Virginia Farm Wineries as poorly conceived, it does not make it unconstitutional. The words of Justice Staples in *Town of Danville v. Pace*, 25 Gratt. at page 8, seem particularly appropriate:

> It should never be forgotten that the courts cannot deny validity to an act of the legislature, because it may seem to the judges that injustice has been done or sound policy disregarded. As has been well said, the judiciary cannot run a race of opinion with the law-making power on points of right, reason and expediency.

The question of the potential conflict between the ABC Board acting as judge/fact-finder and competitor of Heublein is similarly solved. It is a conflict; it is inappropriate; it is constitutional.

The case of *Board of Supervisors v. State Milk*, 191 Va. 1 (1950), is controlling. In that case, the Virginia Supreme Court approved of a legislative scheme whereby the State Milk Commission consisted of three persons, one of whom was engaged in the production of milk, another in the distribution of milk and a third with no connection. The plaintiffs complained that "the delegation of authority to a board in which the majority are interested in a financial way is legislation that is unnatural, unreasonable, arbitrary, illegal, and should be declared unconstitutional."

Undeterred by the plaintiff's powerful plea, the Court, quoting the minority, in *Milk Marketing Board v. Johnson*, 295 Mich. 644, stated:

> Any interest of the members of the board in the result of the rules, regulations and orders promulgated by them does not render the act unconstitutional. In matters affecting legislation or administrative acts, the law only requires that the officers engaged in such administrative act from disinterested motives
> . . .

Even though this Court is critical of the apparent conflict between promoting one group of wines while regulating all wines, that criticism falls well below the test in the *State Milk Commission* case. Conflicts, real or apparent, in the composition of an administrative board do not suggest that their hearings will be improper. In the case at bar the Commission members will not benefit in any material way with any rulings they might make. The conflict is the appearance that in some way the Board's decisions may be influenced by its promotion of Virginia wines. This Court is satisfied that this appearance of impropriety is too remote to fall within the constitutionally approved milk commission case where possible personal gain might have accrued to milk commissioners as the result of their actions. This case also easily meets the Supreme Court test "whether the probability of actual bias on the part of the decision maker is too high to be constitutionally tolerable."

The appearance of conflict between Commission functions does not suggest a "probability of actual bias" and the constitutional challenge must fail.

V. The remaining issue in this case and the issue to which all parties have devoted considerable effort is the question of whether the Farm Winery Exemption may be severed from the Wine Franchise Act if the exemption is found to be unconstitutional.

The Wine Franchise Act contains two clauses regarding severability. One of the clauses relates directly to the issue of the constitutionality of the effective date of the act. If the retroactive establishment of the effective date of the act as January 1, 1985, were to be held unconstitutional then that date could be severed and the prospective date of July 1, 1985, could be substituted.

The second severability clause is the general severability clause permitting severance of any part of the Act that may be found unconstitutional.

There are two guiding principles concerning severance in Virginia law. First, severance is permissible, if after elimination of the offending part, the remaining portions are sufficient to accomplish their purpose in accordance with legislative intent. *Hannabass v. Maryland Casualty Co.*, 169 Va. 559 (1938).

The second principle is that when a particular piece of legislation contains a severability clause, the presumption which ordinarily would require that the entire Act be stricken if any part of it be found unconstitutional, is reversed and the burden is on the assailant to show that legislative intent would require the entire act be stricken rather than the offending clause. *Carter v. Carter Coal Company*, 298 U.S. 238 (1936).

In the presence of a severability clause, the burden of proof upon the party attacking severability is that he must show by a clear probability that the legislature would not have been satisfied with what remains after elimination of the invalid parts. *Woolfolk v. Driver*, 186 Va. 174 (1947).

Legislative intent is the key ingredient in addressing any issue of severability under Virginia law. From that principle, one could suppose that the background for actions of the Virginia legislature appear in voluminous detail. That is not the case. Unlike some states, notably New York, Virginia has no formal legislative history. Legislative intent must be culled from events which are fragmentary and sometimes contradictory.

The plaintiff in this case has assembled a vast array of documentary evidence from which the Court concludes and perhaps anyone could easily conclude, that Virginia Farm Wineries enjoy a favored status in the Commonwealth. The Executive Branch of our government, eager to capitalize on an industry which brings economic growth to our state, has showered farm wineries with attention. Various tax breaks and other concessions have been granted to farm wineries and even the Chairman of our ABC Board has become a hawker for the quality of Virginia wines. The exclusive sale of Virginia wines in our ABC stores is the most recent

manifestation (or perhaps in the view of this Court, aberration) of the favored status of farm wineries.

Armed with this vast array of evidence as to the power of the farm winery lobby, plaintiff argues that the legislature would never have passed the Wine Franchise Act without the exemption, and when the Court severs this exemption, it defeats the plain intent of the legislature. The argument of the plaintiff must certainly be regarded as formidable.

On the other side of the coin, the wine distributors are not political babes in the woods. Their long time attorney and their lobbyist are wise in the ways of the legislature. This is the second wine franchise bill to pass a Virginia Legislature in recent years, and the state also has a beer franchise bill. Clearly, the concept of franchising at the distributor level of alcoholic beverages is a position favored by the Legislature.

The Farm Winery exemption was placed in the Wine Franchise Act to ward off any opposition which might come from farm wineries. The Distributor's lobbyist describes the exemption as a "gnat". In the process of politics "gnats" have a way of becoming impediments and the Court believes that the Distributors were willing to give a concession to the farm wineries to insure passage of their bill.

All of the foregoing is background. The only direct evidence as to the legislative thought process as to the severability of the farm winery exemption came in an exchange in the House of Delegates between the sponsor of the bill and a fellow delegate. When asked what would happen to the bill if the Farm Winery Exemption were found unconstitutional, the bill patron replied that it would be severed. The House of Delegates voted 84 to 6 to pass the Wine Franchise Act even after it presumably knew the Farm Winery exemption could be excised.

In the Senate no like intent is revealed although the number of liters of wine in the Farm Winery exemption was increased to cover all Virginia wineries. This indicates that the Senate certainly was cognizant of the exemption and was concerned that it include all Virginia Farm Wineries.

The Court believes the above to be an accurate summary

of the many volumes of exhibits and the testimony in person and by deposition it has reviewed.

The final line comes down to this. The burden is on the plaintiff to show by a clear probability that the Legislature would intend that the entire bill be stricken rather than have a Wine Franchise Act without the Farm Winery Exemption. The clear evidence that the House of Delegates overwhelmingly passed the Act with full knowledge of the possibility that the Farm Winery exemption could be excised in a court challenge defeats the plaintiff's argument. The plaintiff's impressive array of evidence as to the power of farm wineries cannot defeat the presumption of severability buttressed by the single, direct expression of contrary legislative intent by the House of Delegates.

For the reasons stated. . . I am making the following rulings in the . . . case:

1. The Wine Franchise Act is unconstitutional because the Farm Winery Exemption in the Act is an undue burden upon interstate commerce.

2. The Wine Franchise Act does not impair the obligation of contract under either the Virginia or the United States Constitutions.

3. The effective date of the Act, January 1, 1985, a date prior to enactment, is an impairment of contract and increases the burden of the State in balancing impairment of contract as against the State's Twenty-first Amendment police power to regulate alcoholic beverages, but does meet constitutional standards.

4. The conflict of interest created by the dual function of the Alcohol Beverage Control Board as the regulatory body empowered to enforce the Wine Franchise Act and the designation of the Alcohol Beverage Control Board as the purveyor of Virginia Wines to the exclusion of all other wines in its retail stores is a lamentable piece of legislation. The two sections which create this state of affairs are not both within the Wine Franchise Act. The regulatory scheme itself is an integral part of the Wine Franchise Act. The exclusive sale of Virginia wines in ABC outlets, effective July 1, 1986, creates a favored position within the regulatory body for Virginia wines, creates an appearance of conflict of interest,

and is a probable violation of the Commerce Clause of the United States Constitution.

As poor a piece of lawmaking as this section may be, its institutional basis meets constitutional scrutiny under the broad sweep given by the United States Supreme Court to regulatory bodies and their decision-making process.

5. The Court finds that the unconstitutional exemption of farm wineries from the Franchise Act is severable from the remainder of the legislation.

In short, the Wine Franchise Act is constitutional as of the date of its enactment and the farm winery exemption is excised as unconstitutional utilizing the general severability clause of Act.