**NATIONAL DISTRIBUTING COMPANY, INC., d/b/a NDC Distributors of Pensacola, d/b/a Consolidated Distributors of Jacksonville, d/b/a Consolidated Distributors of Orlando, a Georgia Corporation, Plaintiff–Appellant,**

v.

**JAMES B. BEAM DISTILLING CO. and National Distillers Products Company, Defendants–Appellees.**

No. 87–3708.

United States Court of Appeals, Eleventh Circuit.

May 18, 1988.

R. Larry Morris, Levin, Warfield, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, Pensacola, Fla., Wilbur E. Brewton, Taylor, Brion, Buker & Greene, Tallahassee, Fla., James Riley Davis, Allen I. Hirsch, Debra Minker, Arnall, Golden & Gregory, Atlanta, Ga., for plaintiff-appellant.

Benjamin W. Redding, Barron, Redding, Hughes, Fite, Bassett & Fensom, P.A., Panama City, Fla., Daniel J. O'Neill, Paul G. Pennoyer, New York City, for James Beam Distilling.

H. Edward Moore, Pensacola, Fla., for National Distillers.

Before JOHNSON and HATCHETT, Circuit Judges, and ESCHBACH *, Senior Circuit Judge.

HATCHETT, Circuit Judge.

In this diversity action, appellant, National Distributing Company, challenges the district court's denial of its motion for a preliminary injunction. We affirm.

## FACTS

In May, 1982, appellant, National Distributing Company (NDC), entered into a written distribution contract with appellee, National Distillers Products Company (National Distillers), pursuant to which National Distillers contracted to furnish certain alcoholic beverage brands to NDC for sale to alcoholic beverage vendors throughout the state of Florida. The contract provided that it would terminate on December 31, 1983, but that at least sixty days prior to that date, the parties would review NDC's performance and negotiate in good faith toward an extension of the agreement.

On January 5, 1984, the parties agreed to extend the contract until December 31, 1984. Although the parties again agreed that National Distillers would review NDC's performance and negotiate toward a further extension of the contract, no such negotiations ever occurred. Instead, the parties continued to do business without a written agreement.

At the time the parties signed the original contract, Florida law contained sections 564.045(5) and 565.095(5), commonly referred to as the Brand Withdrawal Act (Act).[1] That law prohibited a manufactur-

---

* Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

1. These statutes provided, in pertinent part, as follows:
§ 565.095(5), effective July 1, 1978, reads as follows:
WITHDRAWAL OF REGISTERED BRAND OR LABEL.—No brand or label registered hereunder or any brand or label of wine may be withdrawn from any distributor after it has been sold by a manufacturer to any distributor unless good cause for its withdrawal is shown by the manufacturer. Withdrawal of a registered brand or label by a manufacturer shall be permitted only if written notice is sent by certified mail to any distributor carrying the manufacturer's brand or label to the division prior to its withdrawal. If no objection is lodged with the division by a distributor carrying the brand or label intended to be withdrawn within the time as hereinafter set forth, the brand or label may be withdrawn without a showing of good cause 60 days after the division's receipt of the manufacturer's notice of intent to withdraw. Any distributor carrying the brand or label or line who objects to its withdrawal shall file its written objection by certified mail with the division and the manufacturer within 60 days from its receipt of the manufacturer's notice of intent to withdraw. The distributor's objection shall be deemed a petition for declaratory statement, must comply with the division's administrative rule for such petitions, and shall be disposed of thereby. In rendering its decision, the division shall consider the reasons given by the manufacturer to justify the withdrawal and the distributor's reason against the withdrawal. If the division determines that good cause to justify the withdrawal is absent, the division may prohibit the brand or label from being withdrawn, and failure on the part of the manufacturer so prohibited to ship the distributor a reasonable amount of the brand sought to be withdrawn will result in the withdrawal from sale in this state of all its brands. All distributors carrying a particular brand or label of spirituous or vinous beverages as of July 1, 1978 shall be deemed to be the distributors for the manufacturers of such brands or labels. No other distributors may be appointed by any manufacturer or representative of a manufacturer to carry the brands or labels already distributed on July 1, 1978 unless the division first approves the withdrawal from the existing distributor pursuant to this act. The purchase of any spirituous or vinous beverages by any licensed wholesaler or distributor from any manufacturer who has not complied with the provisions of this subsection is prohibited. Chapter 565's wine counterpart to the similar liquor provision quoted above was codified at § 565.045(5), Florida Statutes (1981).

er, or "primary American source," such as National Distilling, from withdrawing any brand of wine or liquor from a Florida distributor without demonstrating good cause. Under the Act, a distributor could petition the Department of Business Regulation for a declaratory statement if the distributor felt that cause was not shown. The statutes were repealed on May 31, 1985. *See* Chap. 85–58, Laws of Florida.

On May 26, 1987, appellee, James B. Beam Distilling Company (Beam), purchased the assets of National Distillers's alcoholic beverage division, including those products distributed by NDC in Florida. Beam decided to consolidate its distribution network. Accordingly, on June 30, 1987, Beam notified NDC of its intent to terminate the shipment of alcoholic beverages to NDC, and that effective sixty days from that date, NDC would no longer have the right to sell, distribute, or purchase Beam's alcoholic beverage products.

On August 13, 1987, NDC commenced this action in state court against National Distilling and Beam seeking a permanent injunction to enjoin Beam from terminating NDC as the distributor of Beam's alcoholic beverage brands in northern Florida. After Beam removed the action to the United States District Court for the Northern District of Florida, the district court held a hearing on NDC's motion for a preliminary injunction. The district court denied NDC's motion for a preliminary injunction and entered an order to that effect on October 28, 1987. In that order, the court also denied NDC's motion for an injunction pending appeal.

NDC appeals the district court's October 28, 1987, order denying its application for a preliminary injunction.

## DISCUSSION

■ Our review of a district court's decision to grant or deny an application for a preliminary injunction is governed by the abuse of discretion standard. *Zardui–Quintana v. Richard,* 768 F.2d 1213, 1216 (11th Cir.1985). The district court must exercise its discretion in light of the following four prerequisites:

(1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest.

*Canal Authority v. Callaway,* 489 F.2d 567, 572 (5th Cir.1974). Moreover, as we stated in *United States v. Jefferson County,* 720 F.2d 1511 (11th Cir.1983), a "preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant 'clearly carries the burden of persuasion' as to the four prerequisites." *Jefferson,* 720 F.2d at 1519 (quoting *Callaway,* 489 F.2d at 573).

### I.

In denying NDC's motion for a preliminary injunction, the district court found that NDC failed to demonstrate a substantial likelihood of success on the merits. Specifically, the court found that although the Brand Withdrawal Act was incorporated into the original distribution agreement by operation of law, the Act was no longer controlling after the parties' written distribution agreement terminated on December 31, 1984.

The issue in this case, once removed from the shroud of convoluted principles of contract law, is fairly simple. It is well settled that "[t]he laws in force at the time of the making of a contract enter into and form a part of the contract as if they were expressly incorporated into it." *Florida Beverage Corp. v. Division of Alcoholic Beverages,* 503 So.2d 396, 398 (Fla. 1st D.C.A.1987). Thus, in *Somerset Importers v. Dept. of Business Regulation,* 428 So.2d 679 (Fla. 1st D.C.A.1983), the Florida First District Court of Appeal held that section 565.095(5) is a statute which, by virtue of the above-stated principle of law, becomes a part of a brand distribution contract between a manufacturer and distributor.

As the court observed in *Florida Beverage Corporation,* however, parties to a brand distribution agreement are presumed

"to have agreed that the brands could not be withdrawn *during the term of the agreement* absent good cause therefor." *Florida Beverage Corp.*, 503 So.2d at 398 (emphasis added). Implicit in the court's observation is that a brand distribution contract can and probably will have a termination date by its terms, and that once the underlying contract is terminated, the provisions of the Brand Withdrawal Act are nullified and do not supersede the termination provisions of the contract.

We have not overlooked the decisions relied upon by NDC in *Florida Beverage Corp.* and *Standard Distributing Co. v. Florida Dept. of Business Regulation*, 473 So.2d 216 (Fla. 1st D.C.A.1985). In *Standard Distributing Co.*, the court held that the rights and obligations which became a part of a brand distribution contract, by virtue of the Brand Withdrawal Act, were not nullified where a manufacturer withdrew a brand prior to the repeal of the Act. *Standard Distributing Co.*, 473 So.2d at 219 (on motion for rehearing). Subsequently, in *Florida Beverage Corp.*, the court extended the rationale of *Standard Distributing Co.* and held that the Act was still effective even though the manufacturer in *Florida Beverage Corp.*, similar to Beam here, did not withdraw its brand until *after* the Act had been repealed. *Florida Beverage Corp.*, 503 So.2d at 398.

In addition to the decisions rendered by Florida's First District Court of Appeal, NDC also relies upon *Park Benziger & Co. v. Southern Wine and Spirits, Inc.*, 391 So.2d 681 (Fla.1980). At issue in *Park Benziger* was whether the provisions of the Brand Withdrawal Act became incorporated into an oral, terminable at-will contract which arose *prior* to the effective date of the Act. Reasoning that the effect of the Act would have made an otherwise at-will relationship terminable only for good cause, the Supreme Court of Florida concluded that application of the Act to preexisting contracts would amount to an unconstitutional impairment of contract. *Park Benziger*, 391 So.2d at 383–84; *see also Pomponio v. Claridge of Pompano Condominium, Inc.*, 378 So.2d 774 (Fla.1979). Accordingly, the court held that the Act

could not be applied to brand distribution contracts which came into existence prior to July 1, 1978, the effective date of the Act.

NDC argues that *Park Benziger* is particularly relevant in this case because: 1) the contract between National Distillers and NDC came into existence *subsequent* to the effective date of the Brand Withdrawal Act; and 2) even if NDC and Beam or National Distillers shared an at-will terminable relationship following the termination of their written contract in December 1984, *Park Benziger* demonstrates that even at-will terminable relationships are subject to the provisions of the Brand Withdrawal Act.

Although the reasoning of the Florida courts in *Park Benziger, Florida Beverage Corp.*, and *Standard Distributing Co.* is instructive in delineating the scope of the Act's coverage, we find these cases inapposite for purposes of this appeal. Unlike the present case, a common thread running through *Park Benziger, Florida Beverage Corp.*, and *Standard Distributing Co.* is that the distributors and manufacturers in those cases were under contract at the time that the manufacturers attempted to withdraw their respective brands.

■ In this case, the record makes clear that the distribution contract between the parties expired on December 31, 1984, and that the parties proceeded thereafter on an at-will basis. Accordingly, because the written contract upon which NDC predicates its claims expired on December 31, 1984, the Brand Withdrawal Act no longer governed the parties' relationship after that date. Accordingly, we hold that the district court did not abuse its discretion by denying NDC's motion for a preliminary injunction. Because NDC failed to carry its burden of demonstrating a substantial likelihood of prevailing on the merits, and, thus, is not entitled to a preliminary injunction, we need not address the other prerequisites to such relief.

## II.

■ For the first time on appeal, NDC alleges the existence of an oral contract

between it and National Distillers or Beam subsequent to December 31, 1984, which impliedly incorporated the Brand Withdrawal Act. Because NDC failed to raise this issue in the district court, we decline to consider it on appeal. *United States v. Southern Fabricating Co.*, 764 F.2d 780, 781 (11th Cir.1985); *Sanders v. United States*, 740 F.2d 886, 888 (11th Cir.1984).

Accordingly, the judgment of the district court is affirmed.

AFFIRMED.